UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>JAMES E. HAMILTON, a resident and citizen of Massachusetts, RICHARD M. PERLMAN, a resident and citizen of Massachusetts, and CREATIVE PACKAGING, INC., a Massachusetts corporation,<br><br>*Defendants.* | CIVIL ACTION NO.: 03-CV-12429-MLW |

**MEMORANDUM IN SUPPORT OF
GENERAL ELECTRIC CAPITAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE CLAIMS
AND MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR
SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS**

**SUMMARY**

Plaintiff General Electric Capital Corporation ("GE Capital") seeks to enforce three absolute and unconditional Guaranty Agreements, separately executed by Defendants James Hamilton, Richard Perlman, and Creative Packaging ("Defendants" or "Defendant Guarantors"). Under these Guaranty Agreements, Hamilton, Perlman, and Creative Packaging each guaranteed the payment by and performance of Creative Paper, Inc., a Massachusetts corporation ("Creative Paper"), under various equipment loans and other agreements between Creative Paper and Charter Financial, Inc. ("Charter Financial"). GE Capital purchased a participation interest in the equipment loans from

Charter Financial, and GE Capital is the fiscal agent responsible for servicing the loans and enforcing the Guaranty Agreements.

The Defendant Guarantors acknowledge that Creative Paper is in default for nonpayment. Moreover, on or about October 13, 2003, Creative Paper filed for protection under Chapter 11 of the United States Bankruptcy Code. As a result of both the default and the bankruptcy filing, all obligations of Creative Paper to GE Capital are now due and payable by the Defendant Guarantors. No such payment has been made. Accordingly, GE Capital is entitled to summary judgment on Counts I, II, and III of the First Amended Complaint ("Complaint").

In response, the Defendant Guarantors have asserted six Counterclaims, all based on the contention that the Loan Documents between Charter Financial and Creative Paper use the wrong interest rate. GE Capital disputes this contention, but the dispute is not material to the Motion to Dismiss or the Motion for Summary Judgment. The Guaranty Agreements are *absolute and unconditional*." Under New York law, which the Guaranty Agreements state are the controlling law, such absolute, unconditional guarantees foreclose the Defendant Guarantors from asserting defenses or counterclaims. Furthermore, each of the Counterclaims fails to state a claim on which relief can be granted, for specific reasons discussed below. For these reasons, GE Capital is entitled to dismissal for summary judgment on all of the Counterclaims.

Finally, Defendant Creative Packaging acknowledges that it has breached a 1997 Personal Property Lease Agreement with GE Capital. Thus, GE Capital is entitled to summary judgment on Count IV of the Complaint, which alleges breach of the Personal Property Lease Agreement.

## UNDISPUTED MATERIAL FACTS

GE Capital refers the Court to the Local Rule 56.1 Statement of Undisputed Facts. (The Statement of Undisputed Facts is cited below as "SUF ¶ ." Also referenced below are certain pleadings and documents attached to the Affidavit of Frank Sorensen, filed herewith, and they are cited as "Sorensen Tab .")

## CHOICE OF LAW

This is a diversity case and thus the Court should apply the choice-of-law principles of Massachusetts, the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Massachusetts courts enforce choice-of-law agreements. *Worldwide Commodities, Inc. v. J. Amicone Co.*, 36 Mass. App. Ct. 304, 307-08 (1994).

New York law governs the Guaranty Agreements, the Loan Documents and all claims related to these two sets of Agreements. The Guaranty Agreements and the Loan Agreement contain choice-of-law clauses, selecting the internal laws of New York as the governing law. The Guaranty Agreements provide in § 10 that they "shall in all respects be governed by and constructed in accordance with the internal laws of the State of New York, without reference to principles of conflicts of laws." (Sorensen Tabs E, F, and G, § 10.) Likewise, § 15 of the Master Loan and Security Agreement provides that "[t]his Agreement shall in all respects be governed and construed in accordance with the internal laws of the State of New York, including all matters of construction, validity and performance." (Sorensen Tab A, § 15.)

The Personal Property Lease Agreement that is the subject of Count IV of the Complaint states that it shall be governed by the laws of California. (Sorensen Tab I.)

# ARGUMENT

## I. GE CAPITAL IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON COUNTS I, II, AND III OF THE COMPLAINT.

Counts I, II, and III of the Complaint seek to enforce the Guaranty Agreements against each of the Defendant Guarantors. Under New York law, GE Capital's prima facie burden is to submit proof of the existence of the underlying obligation, the guarantees and default in payment. *European American Bank v. Syosset Autorama, Inc.* 611 N.Y.S.2d 585, 586 (App. Div. 2d Dept. 1994); *Pollina v. Blatt*, 691 N.Y.S.2d 156, 157 (App. Div. 2d Dept. 1999). GE Capital has done so.

There is no dispute that Creative Paper entered into the Loan Documents. (SUF ¶¶ 5, 6, 8, and 9.) Furthermore, there is no dispute that Defendants each executed a separate Guaranty Agreement of Creative Paper's obligations under the Loan Documents. (SUF ¶¶ 12, 13, and 14.) Finally, it is undisputed that Creative Paper is in default under the Loan Documents for failure to pay the amounts due and owing under the Loan Documents. Specifically, Creative Paper failed to pay the sums due and owing under Loan Schedule 01 on August 15, 2003, and Creative Paper failed to pay the sums due and owing under Loan Schedule 02 on September 25, 2003. (SUF ¶¶ 24, 28, and 29.) Defendants each admit that no payments have been made since September 25, 2003 under the Loan Documents. (Answer ¶¶ 19, 28, 37, and 46.)

In addition, it is undisputed that Creative Paper filed a petition for protection under Chapter 11 of the United States Bankruptcy Code on or about October 13, 2003. (SUF ¶ 26.)

By the terms of the Master Loan and Security Agreement and the Guaranty Agreements, all amounts due by Creative Paper under the Loan Documents were

4

accelerated and immediately due and payable without notice at the time Creative Paper defaulted under the Loan Documents by failing to make timely payments. Wholly apart from the payment default, pursuant to Section 7 of the Guaranty Agreements, the obligations were separately accelerated and became due and payable by the Defendant Guarantors when Creative Paper filed for bankruptcy. (*See* Sorensen Tabs E, F, and G.) It is undisputed that no payments have been made by Defendants. As of March 1, 2004, $4,153,801 is owed by Creative Paper under the Loan Documents, exclusive of GE Capital's reasonable attorneys' fees and costs, which it is entitled to collect under the Guaranty Agreements and the Loan Documents.

Thus, GE Capital has demonstrated that it is entitled to summary judgment as a matter of law on Counts I, II, and III of the Complaint, which seek to enforce the Guaranty Agreements. Moreover, as discussed below in Section III, Defendants are precluded from raising defenses and counterclaims to an action to enforce an unconditional, absolute guaranty.

## II. GE CAPITAL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT IV. IT IS UNDISPUTED THAT CREATIVE PACKAGING IS IN BREACH OF THE PERSONAL PROPERTY LEASE AGREEMENT.

Count IV alleges that Defendant Creative Packaging is in breach of a June 23, 1997 Personal Property Lease Agreement, pursuant to which Creative Packaging leases certain quality control equipment from GE Capital.[1] The Personal Property Lease Agreement was assigned to GE Capital on or about June 30, 1998.

---

[1] As discussed above, this claim only is governed by the law of California, pursuant to a choice-of-law provision in the Personal Property Lease Agreement, although GE Capital knows of no material issue that turns on the choice of law.

In its Answer, Creative Packaging acknowledges the following: it is a party to the Agreement; a true copy of the Agreement is attached as Exhibit H to the Complaint; the Personal Property Lease Agreement "speaks for itself"; monthly payments were due in the amount of $4,996.24, for an eighty-four (84) month term (seven years); no such payment was made in September 2003; and no such payments have been made since September 2003. (SUF ¶¶ 30-33; Answer ¶¶ 52-56.)

In short, Creative Packaging does not dispute the fact of its liability for breach of the Personal Property Lease Agreement. Based on these undisputed facts, GE Capital is entitled to summary judgment on Count IV.

### III. DEFENDANTS' COUNTERCLAIMS ARE ALL PRECLUDED BY NEW YORK LAW. FURTHERMORE, EACH COUNTERCLAIM FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

In response to Counts I, II, and III of the Complaint, which seek to enforce the Guaranty Agreements, Defendants assert six Counterclaims which they contend should excuse, offset or reduce their liability under the Guaranty Agreements. They are wrong -- under New York law, Defendants are precluded from asserting such counterclaims or defenses in response to an action to enforce an unconditional, absolute guaranty, such as these Guaranty Agreements. Moreover, Defendants may not assert such claims for the independent reason that these claims belong to Creative Paper, not to the guarantors. Finally, as discussed below, each claim fails to state a claim on which relief can be granted.

#### A. New York law precludes Defendants' counterclaims.

Under New York law, it is well settled that a guarantor may not assert counterclaims to an action that seeks to enforce an unconditional and absolute guaranty.

*See, e.g., Newcourt Small Bus. Lending Corp. v. Grillers Casual Dining Group, Inc.*, 727 N.Y.S.2d 699, 701 (App. Div. 3d Dept. 2001) (unconditional nature of guarantees of promissory note precluded reliance on defense of fraud in the procurement of note); *Marcus Dairy, Inc. v. Jacene Realty Corp.*, 638 N.Y.S.2d 779, 780 (App. Div. 2d Dept. 1996) (party who enters into unconditional guaranty of payment may not assert setoffs or defenses which arise independently from guaranty); *European American Bank v. Lofrese*, 586 N.Y.S.2d 816, 819 (App. Div. 2d Dept. 1992) (having undertaken a broad guarantee "absolutely and unconditionally," defendant guarantor waived any defenses and/or counterclaims he might have had) (*citing Citibank v. Plapinger*, 485 N.E.2d 974 (N.Y. 1985)). *See also In re Boco Enters., Inc.*, 204 B.R. 407, 415 (Bankr. S.D.N.Y. 1997) (when a guarantor has given an unconditional guaranty, its liability is clear as matter of law).

Each Guaranty Agreement is an "absolute and unconditional guarantee," pursuant to which the defendant guarantor has waived their right to assert any defenses or counterclaims they might have. Section 1 of each Guaranty Agreement states that the "Guarantor hereby *unconditionally guarantees* to Obligee" both the payment of the indebtedness and the performance of all other obligations under the Loan Documents. (Sorensen Tabs E, F, and G (emphasis supplied).) In addition, Section 1 states that "[s]uch guaranty is an *absolute, unconditional*, continuing guaranty of payment and not of collectibility, and it is in no way conditioned or contingent upon . . . any [] condition or contingency." *Id.* In short, there are no conditions or contingencies to the Guarantors' obligation to pay in the event the obligation becomes due and payable.

7

Furthermore, Section 3 of the Guaranty Agreements provides that "[t]he obligations of the Guarantor shall remain in full force and effect without regard to, and shall not be affected or impaired in any respect by," among other events, the following:

> (a) any assignment, transfer, amendment, modification, recession or cancellation of or addition or supplement to the Agreements;
>
> (b) the invalidity, illegality or unenforceability of the Agreements or any other agreement or guaranty in respect of the indebtedness or collateral held for the indebtedness;
>
> . . .
>
> (g) *any other cause or circumstance whatsoever*, including without limitation, any other act, thing, omission or delay which would or might in any manner or to any extent vary the risk of Guarantor or which would or might otherwise operate as a discharge of Guarantor as a matter of law.

*Id.* (emphasis supplied). This language, combined with the Guarantors' acknowledgement that the Guaranty Agreements are "unconditional" and "absolute" guarantees of payment, establishes that these three Guarantees are, in fact, unconditional, absolute guarantees under the law of New York, pursuant to which Defendants have waived in advance their right to assert any defenses or counterclaims. The only condition precedent to the Guarantors' liability is the nonpayment of the underlying debt, a fact which is undisputed.

Accordingly, this Court should dismiss each of the Counterclaims or, alternatively, grant GE Capital summary judgment on each of the Counterclaims.

> **B.  The Counterclaims that Defendants seek to assert belong to Creative Paper, not the Defendant Guarantors.  Defendants may not assert such claims in this action.**

The six Counterclaims all arise from the common assertion that the Loan Documents between Charter Financial and Creative Paper, dated October 29, 1999, do

not reflect and use the interest rate figure that Defendants claim was quoted in a prior "Commitment Letter" to Creative Paper, dated September 28, 1999. Defendants claim that GE Capital's predecessor, Charter Financial, either through mistake or deliberate misrepresentation, calculated Creative Paper's monthly payments and total loan balance using a higher interest rate than was referenced in the supposed Commitment Letter.

Even assuming *arguendo* that this allegation is true, the Counterclaims nevertheless fail as a matter of law, because such claims belong to Creative Paper and not to the Guarantors. Under New York law, a defendant guarantor who has been sued alone, without the principal, cannot assert claims that belong to the principal by way of defense or counterclaim. New York law considers such claims to be personal to the principal, and it is for the principal to decide what use, if any, to make of the claims. *See, e.g., Lofrese*, 586 N.Y.S.2d at 819, (*citing Newton v. Lee*, 34 N.E. 905 (N.Y. 1893)); *Elliott v. Brady*, 85 N.E. 69, 71 (N.Y. 1908); *Walcutt v. Clevite Corp.*, 191 N.E.2d 894, 897 (N.Y. 1963).

Thus, Defendants may not assert the counterclaims they now plead. For example, they may not assert the claim for reformation of the Loan Agreement, as they plead in Counterclaim Count I, because this claim belongs uniquely to Creative Paper. It is for Creative Paper to decide whether it wants the Loan Documents reformed, or even whether it agrees that there is a basis to reform the Loan Documents. Likewise, Defendants may not assert a claim for misrepresentation, as they advance in Counterclaim Count II. This claim, too, is personal to Creative Paper, and New York courts have specifically held that a guarantor may not assert a claim for fraud that belongs to the principal. *See Walcutt*, 191 N.E.2d at 897 (guarantor may not impose his

principal's defense of fraud). The same rule bars plaintiffs from asserting the claims for breach of the implied covenant of good faith and fair dealing (Counterclaim Count III), breach of contract (Counterclaim Count IV), interference with contract (Counterclaim Count V) and violation of Mass. Gen. Laws ch. 93A (Counterclaim Count VI), to the extent these claims -- as they all do -- seek to assert claims that belong to Creative Paper.

Because the Defendant Guarantors may not assert claims that belong to Creative Paper, this Court should dismiss the Counterclaims or, in the alternative, enter summary judgment for GE Capital on the Counterclaims.

### C. Counterclaim Count I, for reformation of the Loan Documents, and Count II, for misrepresentation, are barred by an integration clause and the Acceptance Certificate.

Counterclaim Count I alleges that the Loan Documents "[do] not reflect the terms the parties had agreed to concerning the amount of interest to be paid." (Counterclaim ¶ 25.) Plaintiffs thus ask the Court to "reform the [Loan Agreement] so that it reflects the interest obligation the parties actually agreed to." *Id.* ¶ 26. Counterclaim Count II alleges that GE Capital's predecessor, Charter Financial, misrepresented to Creative Paper and the Guarantors that "the interest rate provided in the [Master Loan and Security Agreement] would be calculated" according to the rate provided in the purported "Commitment Letter." (Counterclaim ¶¶ 28-29.)

GE Capital disagrees that the Loan Agreement, which was executed between Charter and Creative Paper, reflects an incorrect interest rate. This dispute of fact, however, is not material to the Motions to Dismiss or for Summary Judgment, because GE Capital is entitled to judgment on both Counterclaim Counts I and II on the

10

independent ground that these Counts are barred by an integration clause contained in the Master Loan and Security Agreement.

According to Defendants, Creative Paper received a "Commitment Letter" dated September 28, 1999, which quoted an interest rate of five points over the five year treasury rate. Even assuming that this is true, one month later Creative Paper (by and through defendant Hamilton) executed the Master Loan Agreement and Loan Schedule 01. Loan Schedule 01 states the Loan Amount, the total Interest over the term of the Loan, the Time Balance, the number of monthly payments and the amount of each payment. (*See* Sorensen Tabs B and C.)[2] Loan Schedule 01 also states that "Debtor agrees to all of the provisions" of Loan Schedule 01," and that Loan Schedule 01 "incorporates the terms and conditions of the Master Agreement." *Id.* The Master Loan and Security Agreement, in turn, provides as follows in Section 15: "This Agreement constitutes the entire agreement between Secured Party [Charter Financial] and Debtor [Creative Paper] and all conversations, agreements and representations relating to this Agreement or to the Equipment are integrated herein." (Sorensen Tab A.)

The integration clause of the Master Loan and Security Agreement and Loan Schedule 01 were each executed by Creative Paper one month after the alleged Commitment Letter. This integration clause, combined with Creative Paper's independent agreement to the terms of Loan Schedule 01, forecloses Defendants from

---

[2] Loan Schedule 01 does not expressly state the interest rate applied that results in the monthly payment amount or the total interest but, by agreeing to the loan term, the total interest amount and monthly payments, Creative Paper necessarily was agreeing to the interest rate used to generate Loan Schedule 01.

asserting that either Creative Paper or they relied up prior representations in the September 28 Commitment Letter about the applicable interest rate. There are no such representations in the Master Loan Agreement or Loan Schedules 01 or 02, and all prior representations are integrated into the Master Loan and Security Agreement. *See General Bank v. Mark II Imports, Inc.*, 741 N.Y.S.2d 201, 202 (App. Div. 1st Dept. 2002) (claims by borrowers and guarantors that they were fraudulently induced to enter into lending arrangement by lender's promises foreclosed by integration clauses in the applicable documents). In any event, any such reliance on the prior "Commitment Letter" could not be reasonable, as a matter of law, in view of the terms of the Master Loan and Security Agreement and Loan Schedule 01.

Even assuming for these purposes only that there was a mistake or misrepresentation in the interest rate used, Creative Paper and the guarantors had an obligation to act with reasonable promptness to correct any such mistake. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 381. Neither Creative Paper nor Defendants did so. Instead they chose to accept the benefits of the Loan Documents that Defendants now claim contained a mistake. By accepting the benefits of the agreement for a period of years, they lost any right to reform, rescind or avoid the agreements. *Id.*

Furthermore, in the Acceptance Certificate executed by Creative Paper on October 29, 1999, Creative Paper represented and warranted that Creative Paper "has no claim or defense whatsoever against or with respect to the Secured Party named above [Charter Financial] or otherwise arising under or relating to the aforesaid Agreement," i.e., claims based on the Loan Documents. (*See* Sorensen Tab H.) This further demonstrates that Creative Paper has no claim for mistake or misrepresentation based on

the interest rate supposedly quoted in the prior September 29, 1999 Commitment Letter. Even if such a claim existed, Creative Paper waived it by signing the October 29, 1999 Acceptance Certificate, stating no such claims existed.

Moreover, this Acceptance Certificate was subsequently used to induce GE Capital to purchase a participation interest in the Loan Agreement. In the Acceptance Certificate itself, Creative Paper acknowledges that the representations and warranties it makes in the Acceptance Certificate may be used to induce a third party such as GE Capital to assume an assignment of the Loan. Creative Paper, as well as Defendants, are thus estopped from arguing that the Loan Documents do not accurately reflect the terms of the agreement between Charter Financial and Creative Paper.

For these reasons, this Court should dismiss or enter summary judgment for GE Capital on Counterclaim Counts I and II.

### D. Counterclaim Count III, alleging breach of an implied contract covenant, and Count IV, alleging breach of contract, fail because Defendants are not parties to the contract they allege has been breached.

Count III alleges, in a vague and conclusory fashion, that GE Capital has breached "the implied covenant of good faith and fair dealing." (Counterclaim ¶ 33.) Count IV, in equally conclusory fashion, alleges that "GE Capital is liable to the [counterclaim] Plaintiffs . . . for breach of contract." (Counterclaim ¶ 35.) Neither Counterclaim specifies which Agreements were breached, much less what terms were violated or how the breach occurred. Such vagueness, however, is immaterial to the grounds on which GE Capital is entitled to judgment as a matter of law.

To the extent Defendants are asserting that GE Capital breached either the express or implied terms of the Loan Documents, such claims fail because Defendants are not

13

~BOST1:295260.v1
22820204-4122

parties to the Loan Documents. Specifically, Defendants are not parties to the Master Loan and Security Agreement, Loan Schedule 01 or Loan Schedule 02. Those Agreements are between Creative Paper, on the one hand, and Charter and GE Capital, on the other. Defendants have no right to assert contract claims based on contracts between other parties, where they are not intended third party beneficiaries. *See, e.g., Omnipoint Communications Inc. v. Comi*, 233 F. Supp. 2d 388, 393 (N.D.N.Y. 2002); *Beacon Syracuse Assocs. v. City of Syracuse*, 560 F. Supp. 188, 200-01 (N.D.N.Y. 1983).[3]

The only contracts on which the Defendant Guarantors might conceivably bring a cause of action for breach of implied covenants or express terms are the Guaranty Agreements to which they are parties. There are no allegations, however, that GE Capital has breached the Guaranty Agreements.

Because Defendants may not enforce contracts such as the Loan Documents to which Defendants are not a party or a third party beneficiary, and because they have not alleged that GE Capital has breached the Guaranty Agreements to which Defendants are parties, the Court should dismiss or otherwise enter summary judgment for GE Capital on Counterclaims III and IV.

---

[3] There are no grounds on which it could be reasonably found that Defendants were third party beneficiaries of the Loan Documents of a type sufficient to give them standing to bring an action for breach of contract. *See Associated Flour Haulers & Warehousemen v. Hoffman*, 26 N.E.2d 7, 9-10 (N.Y. 1940); *Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 897 (N.Y. 1988); (*Port Chester Elec. Constr. Corp. v. Atlas*, 357 N.E.2d 983, 985-86 (N.Y. 1976). If anything, Creative Paper was the intended beneficiary of the Defendants' Guaranty Agreements with GE Capital, not vice versa.

### E. Counterclaim V, for intentional interference with advantageous relations, fails as a matter of law.

Counterclaim V alleges that, "by threatening to enforce its rights as Creative Paper's secured creditor and attempting to hold Creative Paper in default based on its failure to make payments Creative Paper had no obligation to make, GE Capital intentionally and improperly interfered with Creative Paper's business relationships, including Creative Paper's business relationships with [Defendants]."

To state a claim for tortious interference with advantageous business relationships under New York law, a plaintiff must allege that the defendant interfered with an existing business relationship between the plaintiff and a third party, either for the sole purpose of harming the plaintiff or by wrongful means. *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205-06 (2d Cir. 1998); *PPX Enters. v. Audiofidelity Enters.*, 818 F.2d 266, 269 (2d Cir. 1987); *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 664 N.E.2d 492, 496-97 (N.Y. 1996). Wrongful means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference" with a business relationship. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980).

There are a number of reasons that this Counterclaim should be dismissed as a matter of law. *First*, the Counterclaim fails to identify any *particular* contract, prospective contract, or prospective business relationship with which GE Capital allegedly has interfered. "[A] claim for interference with advantageous business relationships must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior." *Kramer v.*

15

*Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995) (*citing PPX Enters., Inc.*, 818 F.2d at 266).[4] The failure to specify such any such specific business relationship or contract is grounds for a motion to dismiss. *Id.*

*Second,* Defendants failed to allege, as they must, how GE Capital induced or otherwise caused a third party either not to do business with the Defendant Guarantors, or not to perform its contracts with the Guarantors. Again, the failure to allege such facts entitles GE Capital to dismissal or summary judgment. *See Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536, 541 (2d Cir.1989); *Guard-Life Corp.*, 406 N.E.2d at 448-49.

*Third,* even assuming for these purposes the truth of the Defendants' allegations in the Counterclaim, Defendants do not allege, as they must, that GE Capital's actions were "motivated solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations." *Kramer*, 890 F. Supp. at 258 (*quoting Entertainment Partners Group, Inc.*, 603 N.Y.S.2d at 440). Quite the opposite, Defendants allegations demonstrate GE Capital was acting out of its own economic interest. The failure to allege that GE Capital was motivated by ill will, or used improper

---

[4] *See also Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106, 1996 WL 363091, at * 14 (S.D.N.Y. July 1, 1996) ("A 'general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship' will not withstand a motion to dismiss" (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (N.Y.A.D.1st Dept. 1992).

means other than acting in its own economic self interest, also is grounds to dismiss the claim as a matter of law. *Id.*[5]

*Finally*, to the extent Defendants are alleging that GE Capital interfered with the Loan Agreement between Creative Paper and Charter Financial/GE Capital, such an allegation fails because, as a matter of law, a party may not interfere with its own contract. *Ryan v. Brooklyn Eye & Ear Hosp.*, 360 N.Y.S.2d 912, 916 (App. Div. 2d Dept. 1974); *Boro Motors Corp. v. Century Motor Sales Corp.*, 187 N.Y.S.2d 490, 493 (N.Y. Sup. Ct. Spec. Term 1959).[6]

For these reasons, the Court should dismiss or otherwise grant judgment for GE Capital on Counterclaim V.

### F. Counterclaim VI, under Mass. Gen. Laws ch. 93A, is derivative of the other claims and fails for similar reasons. Also, the Massachusetts law does not apply because the action is governed by New York law.

Counterclaim Count VI alleges that GE Capital's conduct violates Mass. Gen. Laws ch. 93A, Massachusetts' unfair trade practices statute.

---

[5] Whether this tortious interference claim is governed by New York or Massachusetts law is of no moment, as the elements and principles of law are the same. *See Buster v. George W. Moore, Inc.*, 438 Mass. 635, 652 (2003) ("Claims of intentional interference with contractual or advantageous relations require a showing that the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage."); *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 663 n.3 (1981) (holding that a party cannot be liable for tortious interference with its own contract.").

[6] In addition, GE Capital submits that the claim that it improperly defaulted Creative Paper prior to September 2003, or improperly demanded late fees prior to September 2003, are irrelevant and immaterial. Defendant Guarantors acknowledge that no payments have been made since September 2003, and there is no dispute that Creative Paper has filed for bankruptcy. These two events independently accelerated Creative Paper's obligations and obligated the Guarantors to satisfy Creative Paper's payment obligations, wholly apart from whether GE Capital properly declared a prior default. In any event, as discussed above, those counterclaims are barred because, *inter alia*, Defendants have waived their right to assert counterclaims and Defendants may not assert claims that belong to Creative Paper, as such claims do.

This claim merely is derivative of the misrepresentation, breach of contract and tortious interference claims, and thus fails for the same reasons these claims fall. *Macoviak v. Chase Home Mortgage Corp.*, 40 Mass. App. Ct. 755, 760-61 (1996) (stating that a plaintiff has no reasonable expectation of proving a ch. 93A claim based solely upon an underlying claim for common-law fraud which has failed); *Cantell v. Hill Holliday Connors Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 556 (2002).

Even assuming for these purposes only that Defendants otherwise have stated a claim under Mass. Gen. Laws ch. 93A, the claim should nevertheless be dismissed because the Guaranty Agreements and the Loan Agreement provide that they "shall be construed in accordance with, and governed by, the laws of the State of New York." When a Chapter 93A claim is essentially a breach of contract claim "embroidered" with a claim of bad faith or other rascal-like conduct, the choice of another state's law in that contract bars this Massachusetts statutory claim. *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609-10 (1st Cir. 1993) ("[W]hen parties agree that 'contract related' claims will be tried under, say, the law of California, they do not mean that a claim of 'serious' or 'rascal-like' breach of contract will be tried under the law of Massachusetts."). *See also Worldwide Commodities, Inc. v.. J. Amicone Co., Inc.*, 36 Mass. App. Ct. 304, 307-08 (1994) (holding that, when contract violations were at the core of the Chapter 93A claim, the contract's choice-of-law clause barred application of the Massachusetts statute); *Mead Corp. v. Stevens Cabinets, Inc.*, 938 F. Supp. 87, 90-91 (D. Mass. 1996) (stating that choice-of-law clause selecting another state's law to govern "contract related" claims precludes a Chapter 93A claim when that claim essentially reduces to a contract claim).

That is the case here. This is simply a dispute over the meaning and application of underlying contract documents, which Defendants have "embroidered" with misrepresentation and other claims. Such claims do not, however, remove this case from New York law, which the parties agreed to apply to any dispute arising from the Loan Documents. Accordingly, Defendants have no claims under Mass. Gen. Laws ch. 93A.

## CONCLUSION

For these reasons, GE Capital asks this Court for the following relief:

A. Enter summary judgment in GE Capital's favor on all Counts of the First Amended Complaint,

B. On Counts I, II and III of the First Amended Complaint, award GE Capital damages against the defendants, jointly and severally, in the amount of **$4,153,801,** plus interest to the date of judgment and GE Capital's reasonable attorneys' fees and costs;

C. On Count IV of the First Amended Complaint, award GE Capital damages against Creative Packaging, in the amount of $69,924.23, plus interest to the date of judgment and GE Capital's reasonable attorneys' fees and costs;

D.  Dismiss the Counterclaims pursuant to Rule 12(b)(6) for failure to state claims on which relief can be granted, or alternatively grant GE Capital summary judgment on all of the Counterclaims.

> GENERAL ELECTRIC
> CAPITAL CORPORATION,
> a Delaware corporation
>
> By its attorneys,
>
> _____
> C. Dylan Sanders (BBO #630668)
> Steven J. Buttacavoli (BBO #651440)
>
> PIPER RUDNICK LLP
> One International Place, 21st Floor
> 100 Oliver Street
> Boston, MA 02110-2600
> (617) 406-6000 (*telephone*)
> (617) 406-6100 (*fax*)

Dated: March 22, 2004

> CERTIFICATE OF SERVICE
> I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL (BY HAND) ON 3/22/04
> _____

20