UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>JAMES E. HAMILTON, a resident and citizen of Massachusetts, RICHARD M. PERLMAN, a resident and citizen of Massachusetts, and CREATIVE PACKAGING, INC., a Massachusetts corporation,<br><br>*Defendants.* | CIVIL ACTION NO.: 03-CV-12429-MLW |

**LOCAL RULE 56.1 STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF
GENERAL ELECTRIC CAPITAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE CLAIMS
AND MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR
SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS**

Pursuant to Local Rule 56.1, plaintiff General Electric Capital Corporation ("GE Capital"), hereby submits this concise statement of the material facts of record as to which there is no genuine issue to be tried. The documents referenced herein are collected as attachments to the Affidavit of Frank Sorensen (cited "Sorensen Tab   "), submitted herewith.

A.   **Parties**

1.   GE Capital is a corporation organized under the laws of Delaware, with its principal place of business in Connecticut. (Sorensen Affidavit ¶ 16.)

2. Hamilton is an individual who is a resident and citizen of Massachusetts, residing at 23 Annie Moor Road, Bolton, Massachusetts. (Answer ¶ 2.)

3. Perlman is an individual who is a resident and citizen of Massachusetts, residing at 275 Country Club Road, Newton, Massachusetts. (Answer ¶ 3.)

4. Creative Packaging is a Massachusetts corporation with its principal place of business located at 175 James Street, Worcester, Massachusetts. (Answer ¶ 4.)

**B.    Charter Loan Agreements**

5. On or about November 18, 1999, Creative Paper, an affiliate of Creative Packaging, entered into the following agreements with Wentworth Capital, a division of Charter Financial: (a) a Master Loan and Security Agreement No. 4366 dated October 29, 1999, including a First Rider, Second Rider and Amendment to the Master Loan Agreement No. 4366; and a Loan Schedule 01 to the Master Loan and Security Agreement No. 4366, including an Amendment to Loan Schedule 01 to Master Loan and Security Agreement No. 4366. (Sorensen Affidavit ¶ 3.)

6. Pursuant to Loan Schedule 01, Charter Financial extended equipment financing to Creative Paper in the principal amount of $6,500,000. (Sorensen Affidavit ¶ 6; Sorensen Tab B.)

7. Creative Paper agreed, among other things, to repay the loan through eighty-four (84) monthly installment payments of principal and interest, in the amount of $109,835, beginning on November 15, 1999. (Sorensen Affidavit ¶ 6; Sorensen Tab B.)

8. Pursuant to the Amendment to Loan Schedule 01, executed on November 18, 1999, the monthly payments due under Loan Schedule 01 were increased to $110,300. (Sorensen Affidavit ¶ 7; Sorensen Tab C.)

2

9. On or about December 24, 1999, Creative Paper and Charter Financial entered into a Financial Loan Schedule 02 to the Master Loan Agreement and Security Agreement No. 4366. (Sorensen Affidavit ¶ 8; Sorensen Tab D.)

10. Pursuant to Loan Schedule 02, Charter advanced to Creative Paper an additional $1,000,000 in financing. Creative Paper agreed to repay the financing advanced pursuant to Loan Schedule 02 in eighty-four (84) monthly installments of $17,229, beginning on December 25, 1999. (Sorensen Affidavit ¶ 10; Sorensen Tab D.) (The Master Loan and Security Agreement, Loan Schedule 01, Amendment to Loan Schedule 01 and Loan Schedule 02, are referred to herein as the "Loan Documents.")

11. To induce Charter Financial to enter into the Loan Documents and extend the equipment financing, Hamilton, Perlman, and Creative Packaging each executed an unconditional, absolute guaranty of the payment and performance by Creative Paper of all amounts due under the Loan Documents. (Sorensen Affidavit ¶ 11; Sorensen Tabs E, F, and G.)

12. On or about October 29, 1999, Hamilton executed a Guaranty Agreement with Charter Financial (the "Hamilton Guaranty"). Charter Financial accepted the Hamilton Guaranty on or about November 18, 1999. Hamilton was notified of this acceptance within a reasonable period thereafter. (Sorensen Affidavit ¶ 12; Sorensen Tab E; Answer ¶ 10.)

13. On or about October 29, 1999, Perlman executed a Guaranty Agreement with Charter Financial (the "Perlman Guaranty"). Charter Financial accepted the Perlman Guaranty on or about November 18, 1999. Perlman was notified of this

acceptance within a reasonable period thereafter. (Sorensen Affidavit ¶ 13; Sorensen Tab F; Answer ¶ 11.)

14.   On or about October 29, 1999, Creative Packaging executed a Guaranty Agreement with Charter Financial (the "Creative Packaging Guaranty"). Charter Financial accepted the Creative Packaging Guaranty on or about November 18, 1999, and Creative Packaging was notified of this acceptance within a reasonable period thereafter. (Sorensen Affidavit ¶ 14; Sorensen Tab G; Answer ¶ 12.) (Hereinafter, the Hamilton Guaranty, the Perlman Guaranty, and the Creative Packaging Guaranty are from time to time referred to collectively as the "Guaranty Agreements.")

15.   The Guaranty Agreements are absolute and unconditional. By their express terms, the Guaranty Agreements guarantee payment and performance, and not merely collectibility, of the obligations of Creative Paper under the terms of the Loan Documents. The Guaranty Agreements are in no way conditioned or contingent upon any attempt to collect from Creative Paper or any other person, entity, or guarantor. (Sorensen Tabs E, F, and G.)

16.   Pursuant to Section 4 of the Guaranty Agreements, each Guarantor expressly waived *inter alia* "all notices which may be required by statute, rule of law or otherwise to preserve any rights of Obligee against [Creative Paper] or Guarantor, including without limitation, notice of presentment and protest to, and demand and payment from, [Creative Paper] or Guarantor." (Sorensen Tabs E, F, and G.)

17.   Section 3 of the Guaranty Agreements provides that "[t]he obligations of the Guarantor shall remain in full force and effect without regard to, and shall not be affected or impaired in any respect by," among other events, the following:

4

(a) any assignment, transfer, amendment, modification, recession or cancellation of or addition or supplement to the Agreements;

(b) the invalidity, illegality or unenforceability of the Agreements or any other agreement or guaranty in respect of the indebtedness or collateral held for the indebtedness;

[. . .]

(g) any other cause or circumstance whatsoever, including without limitation, any other act, thing, omission or delay which would or might in any manner or to any extent vary the risk of Guarantor or which would or might otherwise operate as a discharge of Guarantor as a matter of law.

(Sorensen Tabs E, F, and G.)

18. Pursuant to Section 2 of the Guaranty Agreements, each Guarantor agreed to "pay all costs and expenses incurred by or on behalf of Obligee (including, without limitation, reasonable attorneys' fees and expenses) in enforcing the obligations of Guarantor hereunder, and the obligations of [Creative Paper]." (Sorensen Tabs E, F, and G.)

19. On or about October 29, 1999, Creative Paper, Inc., by and through defendant James Hamilton, executed a Delivery Receipt and Acceptance Certificate, in favor of Charter (the "Acceptance Certificate"). In the Acceptance Certificate, Creative Paper made the following representations and warranties, among others:

> [Charter] has performed and satisfied all covenants and conditions to be performed and satisfied by it on or prior to the date hereof.
>
> The undersigned has no claim or defense whatsoever against or with respect to [Charter] or otherwise arising under or relating to the aforesaid Agreement.
>
> The undersigned has been advised that [Charter] may assign the aforesaid Agreement, for value, and makes the foregoing representations and warranties in order to induce the Assignee to accept such assignment, *and agrees that such Assignee may rely upon the aforesaid representations and warranties and that*

5

> *notwithstanding any event or circumstance whatsoever*, the undersigned shall pay and perform all liabilities and obligations arising under or relating to the aforesaid Agreement in accordance with its terms.

(Emphasis supplied.)  (Sorensen Tab H.)

### C. GE Capital

20. On or about November 19, 2001, GE Capital purchased and Charter assigned to GE Capital a participation interest in the Loan Documents and the Guaranty Agreements, pursuant to a Participation Agreement between Charter Financial and GE Capital. (Sorensen Affidavit ¶ 17.)

21. To induce GE Capital to purchase a participation interest, Charter provided GE Capital, and GE Capital relied upon, among other things, the Loan Documents and the Acceptance Certificate. At no time prior to purchasing the participation interest did GE learn that Creative Paper disputed the interest rate used by the Loan Documents. (Sorensen Affidavit ¶ 18.) The Acceptance Certificate represented and warranted there were no such claims. (Sorensen Tab I.)

22. On or about December 7, 2001, GE Capital exercised certain of its rights under the Participation Agreement and became Fiscal Agent for all participants in the loan described in the Loan Documents. By the terms of the Participation Agreement, GE Capital, as Fiscal Agent, is responsible for, among other things, administration of the Loan Documents and the Guaranty Agreements, collection of all sums payable under the Loan Documents and the Guaranty Agreements, and enforcement of the Loan Documents and the Guaranty Agreements. (Sorensen Affidavit ¶ 19.)

23. GE Capital and the other obligees under the Loan Documents and Guaranty Agreements have complied with the Loan Documents and the Guaranty

Agreements, and have substantially satisfied any and all conditions and obligations required by them thereunder. (Sorensen Affidavit ¶ 20.)

### D.  Creative Paper Defaults

24. Creative Paper is in default under the Loan Documents for failure to pay the amounts due and owing thereunder. Specifically, Creative Paper failed to pay the sums due and owing under Loan Schedule 01 on August 15, 2003 and Creative Paper failed to pay the sums due and owing under Loan Schedule 02 on September 25, 2003, and has failed to make any payments since that point in time. (Sorensen Affidavit ¶ 21; Answer ¶¶ 19, 28, 37, and 46.)

25. On October 1, 2003, GE Capital notified Creative Paper that an Event of Default had occurred and GE Capital demanded immediate payment in full of all amounts due and owing under the Loan Agreements. (Sorensen Affidavit ¶ 22.)

26. In addition, on or about October 13, 2003, Creative Paper filed a petition for protection under Chapter 11 of the United States Bankruptcy Code. (Sorensen Affidavit ¶ 23.)

27. Section 7 of the Guaranty Agreements provides as follows:

> [I]f a petition in bankruptcy or any insolvency, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding shall be filed or commenced by, against or in respect of [Creative Paper], or if an order for relief shall be entered in respect of [Creative Paper] or Guarantor in any case under the Bankruptcy Code, the obligations of Guarantor hereunder shall remain in full force and effect; and any and all obligations of [Creative Paper] and Guarantor to Obligee shall, at the option of Obligee, forthwith become due and payable without notice.

(Sorensen Tabs E, F, and G.)

28. As of October 13, 2003, after acceleration as expressly provided for by the Loan Documents, Creative Paper owed approximately $4,153,801 under the Loan Documents (the "Current Obligation"), exclusive of GE Capital's attorneys' fees. (Sorensen Affidavit ¶  .)

29. As of March 1, 2004, Creative Paper remains in default and owes $4,153,801, exclusive of GE Capital's reasonable attorneys' fees (the "Current Obligation"). (Sorensen Affidavit ¶ 24.)

30. The Current Obligation has not been paid. (Sorensen Affidavit ¶ 25; Answer ¶¶ 28, 37, and 46.)

### E. Personal Property Agreement

31. On or about June 23, 1997, in a transaction unrelated to the Loan Agreement with Charter, Creative Packaging entered into a Personal Property Lease Agreement with Measurex Systems, Inc. Under the terms of this Personal Property Lease Agreement, Creative Packaging agreed to lease certain quality control equipment, for monthly lease payments of approximately $4,996.24, for an eighty-four (84) month term. (Sorensen Affidavit ¶ 26; Sorensen Tab I; Answer ¶ 52.)

32. On or about June 30, 1998, the Personal Property Lease Agreement was assigned to GE Capital. (Sorensen Affidavit ¶ 28.)

33. Since the Personal Property Lease Agreement was acquired by GE Capital, Creative Packaging has defaulted under the Personal Property Lease Agreement several times. Most recently, Creative Packaging failed to make a September 2003 payment. (Sorensen Affidavit ¶ 29.)

34. Creative Packaging remains in default under the Personal Property Loan Agreement. No payment has been made since September 2003 and Creative Packaging retains possession of the equipment subject to the Personal Property Lease Agreement. (Sorensen Affidavit ¶ 39; Answer ¶¶ 54, 55.)

35. As of March 1, 2004, Creative Packaging owes $69,924.23 under the Personal Property Lease Agreement, exclusive of GE Capital's reasonable attorneys' fees.

GENERAL ELECTRIC
CAPITAL CORPORATION,
a Delaware corporation

By its attorneys,

_____
C. Dylan Sanders (BBO #630668)
Steven J. Buttacavoli (BBO #651440)

PIPER RUDNICK LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated: March 22, 2004

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL (BY HAND) ON  3/22/04
_____

~BOST1:296398.v1
22820204-4122