UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>JAMES E. HAMILTON, a resident and citizen of Massachusetts, RICHARD M. PERLMAN, a resident and citizen of Massachusetts, and CREATIVE PACKAGING, INC., a Massachusetts corporation,<br><br>*Defendants.* | CIVIL ACTION NO.: 03-CV-12429-MLW |

## AFFIDAVIT OF FRANK SORENSEN

I, Frank Sorensen, depose and state as follows:

1. I am the Vice President for Strategic Asset Financing in the Commercial Finance Division of the plaintiff, General Electric Capital Corporation ("GE Capital").

2. I submit this Affidavit in support of GE Capital's Motion for Summary Judgment on Its Affirmative Claims and Motion to Dismiss or, Alternatively, Motion for Summary Judgment on Defendants' Counterclaims. I make this Affidavit on personal knowledge and on a review of the relevant documents in the files of GE Capital.

A.  **Charter Financial Loan Documents**

3. On or about November 18, 1999, Creative Paper, an affiliate of Creative Packaging, entered into the following agreements with Wentworth Capital, a division of Charter Financial: (a) a Master Loan and Security Agreement No. 4366 dated October 29, 1999, including a First Rider, Second Rider and Amendment to the Master Loan

Agreement No. 4366; and a Loan Schedule 01 to the Master Loan and Security Agreement No. 4366, including an Amendment to Loan Schedule 01 to Master Loan and Security Agreement No. 4366.

4. A true and accurate copy of the Master Loan and Security Agreement is attached hereto at Tab A. A true and accurate copy of Loan Schedule 01 is attached hereto at Tab B. A true and accurate copy of the Amendment to Loan Schedule 01 is attached hereto at Tab C.

5. Pursuant to Loan Schedule 01 Charter Financial extended equipment financing to Creative Paper in the principal amount of $6,500,000.

6. Creative Paper agreed, among other things, to repay the loan through eighty-four (84) monthly installment payments of principal and interest, in the amount of $109,835, beginning on November 15, 1999.

7. Pursuant to the Amendment to Loan Schedule 01, executed on November 18, 1999, the monthly payments due under Loan Schedule 01 were increased to $110,300.

8. On or about December 24, 1999, Creative Paper and Charter Financial entered into a Financial Loan Schedule 02 to the Master Loan Agreement and Security Agreement No. 4366.

9. A true and accurate copy of Loan Schedule 02 is attached hereto at Tab D.

10. Pursuant to Loan Schedule 02 Charter advanced to Creative Paper an additional $1,000,000 in financing. Creative Paper agreed to repay the financing advanced pursuant to Loan Schedule 02 in eighty-four (84) monthly installments of $17,229, beginning on December 25, 1999. (The Master Loan and Security Agreement,

Loan Schedule 01, Amendment to Loan Schedule 01 and Loan Schedule 02, are referred to herein as the "Loan Documents.")

11. Defendants James Hamilton, Richard Perlman, and Creative Packaging each executed an unconditional, absolute guaranty of the payment and performance by Creative Paper of all amounts due under the Loan Documents.

12. On or about October 29, 1999 Hamilton executed a Guaranty Agreement with Charter Financial (the "Hamilton Guaranty"). Charter Financial accepted the Hamilton Guaranty on or about November 18, 1999 and Hamilton was notified of this acceptance within a reasonable period thereafter. A true and accurate copy of the Hamilton Guaranty is attached at Tab E.

13. On or about October 29, 1999, Perlman executed a Guaranty Agreement with Charter Financial (the "Perlman Guaranty"). Charter Financial accepted the Perlman Guaranty on or about November 18, 1999 and Perlman was notified of this acceptance within a reasonable period thereafter. A true and accurate copy of the Perlman Guaranty is attached at Tab F.

14. On or about October 29, 1999 Creative Packaging executed a Guaranty Agreement with Charter Financial (the "Creative Packaging Guaranty"). Charter Financial accepted the Creative Packaging Guaranty on or about November 18, 1999 and Creative Packaging was notified of this acceptance within a reasonable period thereafter. A true and accurate copy of the Creative Packaging Guaranty is attached as Tab G. (Hereinafter, the Hamilton Guaranty, the Perlman Guaranty, and the Creative Packaging Guaranty are from time to time referred to collectively as the "Guaranty Agreements.")

15. On or about October 29, 1999, Creative Paper, by and through defendant James Hamilton, executed a Delivery Receipt and Acceptance Certificate, in favor of Charter (the "Acceptance Certificate"). A true and accurate copy of the Acceptance Certificate is attached as Tab H.

**B.     GE Capital's Participation**

16. GE Capital is a Delaware corporation with its principal place of business in Connecticut.

17. On or about November 19, 2001, GE Capital purchased and Charter assigned to GE Capital a participation interest in the Loan Documents and the Guaranty Agreements, pursuant to a Participation Agreement between Charter Financial and GE Capital.

18. To induce GE Capital to purchase a participation interest, Charter provided GE Capital, and GE Capital relied upon, among other things, the Loan Documents and the Acceptance Certificate. At no time prior to purchasing the participation interest did GE learn that Creative Paper disputed the interest rate used under the Loan Documents.

19. On or about December 7, 2001, GE Capital exercised certain of its rights under the Participation Agreement and became Fiscal Agent for all participants in the loan described in the Loan Documents. By the terms of the Participation Agreement, GE Capital, as Fiscal Agent, is responsible for, among other things, administration of the Loan Documents and the Guaranty Agreements, collection of all sums payable under the Loan Documents and the Guaranty Agreements, and enforcement of the Loan Documents and the Guaranty Agreements.

~BOST1:296753.v1
22820204-4122

20. GE Capital and the other obligees under the Loan Documents and Guaranty Agreements have complied with the Loan Documents and the Guaranty Agreements, and have substantially satisfied any and all conditions and obligations required by them thereunder.

C. **Creative Paper Defaults**

21. Creative Paper is in default under the Loan Documents for failure to pay the amounts due and owing thereunder. Specifically, Creative Paper failed to pay the sums due and owing under Loan Schedule 01 on August 15, 2003 and Creative Paper failed to pay the sums due and owing under Loan Schedule 02 on September 25, 2003. Apart from three adequate protection payments that have been made pursuant to orders of the Bankruptcy Court, Creative Paper has made no payments since September 25, 2003, and Creative Paper remains in default.

22. On October 1, 2003, GE Capital notified Creative Paper that an Event of Default had occurred and GE Capital demanded immediate payment in full of all amounts due and owing under the Loan Documents.

23. In addition, on or about October 13, 2003, Creative Paper filed a petition for protection under Chapter 11 of the United States Bankruptcy Code.

24. As of March 1, 2004, Creative Paper remains in default and owes $4,153,801 under the Loan documents (the "Current Obligation"), exclusive of GE Capital's attorneys' fees and costs.

25. The Current Obligation has not been paid. The Defendant Guarantors have made no payments on behalf of Creative Paper's obligations.

### D. Personal Property Agreement

26. On or about June 23, 1997, in a transaction unrelated to the financing with Charter, Creative Packaging entered into a Personal Property Lease Agreement with Measurex Systems, Inc. A true and accurate copy of this Personal Property Lease Agreement is attached hereto at Tab I.

27. Under the terms of this Personal Property Lease Agreement, Creative Packaging agreed to lease certain quality control equipment, for monthly lease payments of approximately $4,996.24, for an eighty-four (84) month term.

28. On or about June 30, 1998, the Personal Property Lease Agreement was assigned to GE Capital.

29. Since the Personal Property Lease Agreement was acquired by GE Capital, Creative Packaging has defaulted under the Lease Agreement several times. Most recently, Creative Packaging failed to make a September 2003 payment.

30. Creative Packaging remains in default under the Personal Property Lease Agreement. No payment has been made since September 2003 under the Personal Property Lease Agreement.

31. As of March 1, 2004, Creative Packaging owed $69,924.23 under the Personal Property Lease Agreement, exclusive of GE Capital's attorneys fees and costs.

SIGNED UNDER THE PENALTIES OF PERJURY
THIS 2nd DAY OF MARCH 2004.

_____
Mr. Frank Sorensen

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL (BY HAND) ON 3/22/04