UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

GENERAL ELECTRIC CAPITAL
CORPORATION,

Plaintiff,

v.

JAMES E. HAMILTON, RICHARD M.
PERLMAN, and CREATIVE
PACKAGING, INC.

Defendants.

CIVIL ACTION NO. 03-CV-12429-MLW

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants James E. Hamilton, Richard M. Perlman and Creative Packaging, Inc.

(collectively, the "Guarantors") respectfully submit this memorandum in opposition to

the motion of plaintiff General Electric Capital Corporation ("GE Capital") for summary

judgment. The motion should be denied because there are issues of material fact

concerning liability and damages.

Among other reasons, summary judgment should be denied because:

- GE Capital has no right to collect on the promissory note, given that it is not a party to that transaction and is not authorized to act for the lender;

- There is a dispute concerning the amount of the debt guarantied; and

- Nothing in the guaranties precludes the defendants from proceeding with the counterclaims they have asserted based on GE Capital's unfair and deceptive conduct, which included forcing the underlying obligor into bankruptcy by insisting on payments that were not owed, because of an alleged default that did not exist.

### Introduction

GE Capital seeks to recover on a promissory note in which it purchased a

participation. The borrower, Creative Paper, Inc. (the "Debtor"), is in bankruptcy. This

action is against the Guarantors.

Although GE Capital's name appears nowhere on the loan or guaranty documents, GE Capital nevertheless claims in an affidavit, without attaching any supporting documents, that it was entitled to take over the lender's responsibility for enforcing the terms of the loan and guaranty documents. After claiming to have assumed this responsibility, GE Capital aggressively insisted on payment of late fees it claimed the Debtor owed, even though the Debtor had made all payments on time to the lender, as required by the loan documents. When GE Capital improperly claimed that the entire principal amount had been accelerated and threatened foreclosure on the Debtor's equipment and machinery, the Debtor had to seek protection under the bankruptcy laws.

Now, having brought about the Debtor's bankruptcy, GE Capital arrogantly asserts that the Guarantors have no right to contest its claim or to challenge its conduct. Claiming that New York law applies and that New York law would interpret the guaranties as depriving the Guarantors of any defenses or counterclaims, GE Capital argues, in essence, that the Guarantors are unconditionally liable for whatever GE Capital says the Debtor owes, and that this Court may disregard anything the Guarantors may have to say in their defense. GE Capital overstates its case.

Whatever state's law governs, the Guarantors only guarantied the debtor's performance of its obligations. They are entitled to argue in their defense about the amount owed and about whether the conditions that trigger their liability or that accelerate the promissory note have occurred.

The Guarantors, two principals and an affiliate of the Debtor, are entitled to bring counterclaims and assert defenses to liability, just as the Debtor could have done if it were the defendant. Because they have asserted those claims and demonstrated through

2

affidavit that issues of material fact exist concerning the existence and extent of their liability on GE Capital's claim, as well as the amount of set off required because of the Guarantors' counterclaims, summary judgment should be denied.

Summary of the Facts

The Guarantors are filing herewith a response to GE Capital's Local Rule 56.1 Statement of Undisputed Facts, which includes a separate statement of additional facts they rely on in support of their claims and in opposing summary judgment. The facts on which the Guarantors rely in this memorandum are as follows:

The Guaranty Claim

The rate of interest on which the repayment obligation in the promissory note was based did not match the parties' agreement. Because the loan schedules stated the dollar amount instead of the percentage rate, the Debtor and the Guarantors did not realize at the time they signed the loan documents that the interest rate was incorrect. Contrary to the suggestion in GE Capital's summary judgment memorandum, the Debtor notified the lender of this shortly after the closing.

The actions of GE Capital necessitated the Debtor's bankruptcy filing in October 2003, at a time when the Debtor was not in default under the loan agreements. Claiming late fees that were not owed and threatening to exercise its rights concerning the Debtor's machinery and equipment that had been pledged as collateral, GE Capital brought about the bankruptcy that it claims entitles it to proceed against the Guarantors.

Although the guaranties contained a New York choice of law provision, none of the transactions at issue occurred in New York. The negotiations for the loan took place in Massachusetts, the closing took place in Massachusetts, the equipment used as collateral is in Massachusetts, the borrower and all of its employees are in Massachusetts,

3

and the persons involved in negotiating the loan and guaranties are in Massachusetts and New Hampshire (Creative Paper negotiated the loan with employees in Charter Financial's Portsmouth, New Hampshire office). The only connection to New York was that Charter Financial had an office there and used its New York address on the loan documents.

### The Lease Claim

GE Capital's other claim involves the lease of testing equipment acquired by Creative Paper for use in its business. The claim is against Creative Packaging because that is the entity actually named as lessor in the lease document.

The lease document contains a scrivener's error. It was never intended by the parties that Creative Packaging be the lessee. The equipment was used only by Creative Paper in its business. The $50,000 initial down payment was made by Creative Paper. All lease installments were billed to and paid by Creative Paper. Creative Paper leased this equipment, not Creative Packaging.

### Argument

GE Capital is not entitled to summary judgment. The existence of defaults and the amount owed under the promissory note underlying the guaranties are in dispute, as are rights of set-off arising from the counterclaims. Contrary to GE Capital's argument, the Guarantors are entitled to raise defenses and counterclaims against GE Capital, whether the laws of New York or the laws of Massachusetts apply. Even under the most restrictive reading of the guaranties, the Guarantors' liability cannot exceed that of the Debtor, and the amount owed by the Debtor is a disputed issue of material fact.

I.    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE GE CAPITAL IS
NOT A PARTY TO THE GUARANTIES OR PROMISSORY NOTE UNDER
WHICH IT SEEKS PAYMENT.

Neither the Debtor nor the Guarantors entered into any agreement with GE

Capital.  They entered into agreements with Charter Financial.  GE Capital claims in its

motion for summary judgment to be the assignee of the loan and of the guaranties, and

refers to a "Participation Agreement between Charter Financial and GE Capital."  See

Sorensen Aff., ¶¶17-20.  The best evidence of such a transaction would be the agreement.

See A.G. v. Town of Ware, 328 Mass. 18, 23 (1951) ("[w]here the contents of a ...

written document are needed in evidence, the writing should be produced, when there is

no good reason for the non-production of it").  GE Capital has failed to provide the

document on which it claims to rely, however, relying instead on its affiant's conclusory

statements about its legal effect.  The actual document does not support GE Capital's

claim, and this alone justifies denial of GE Capital's motion.

The Participation Agreements did not in fact give GE Capital the rights it has

claimed it had.  A review of the actual agreements, rather than reliance on the statements

in Mr. Sorensen's affidavit, demonstrates this.

The Debtor obtained copies of the Participation Agreements from GE Capital

after many months of asking for them.  As it has done with this Court, GE Capital

apparently wanted the Debtor to take its word that it was authorized to enforce a loan

agreement to which it was not a party. See Porter Aff., ¶¶29-31. The Participation

Agreements, provided to this Court by the Guarantors, do not support GE Capital's

assertions.  Those agreements did not entitle GE Capital to take over as fiscal agent

unless the Debtor was in default. See Porter Aff., Exs. 9 and 10, section 3(f).  Although

the Debtor was not in default, GE Capital purported to act as fiscal agent almost

5

immediately. Porter Aff., ¶25. The Participation Agreements did not, and do not, entitle GE Capital to do so.

Because GE Capital was not a party to and had no right to enforce the loan or guaranty agreements, summary judgment should be denied.

## II.    THE LAW OF MASSACHUSETTS GOVERNS IN THIS CASE, DESPITE THE CHOICE OF LAW PROVISION.

The Guarantors agree with GE Capital that Massachusetts conflicts of laws principles should be applied in determining what state's substantive laws govern. See GE Capital's Summary Judgment Memorandum, p. 3. The parties thereafter diverge in their application of those principles. GE Capital argues that a New York choice of law provision in the guaranties means that all of the parties' claims, contract and tort, are governed by New York law. The Guarantors submit that the laws of Massachusetts apply to all claims.

The laws of Massachusetts apply to the breach of contract claims under the guaranties, despite the choice of law provision, because the chosen state, New York, has no substantial relationship to the parties or the transaction.

The laws of Massachusetts apply to the tort claims as well. The choice of law provision is limited to claims to enforce the guaranty agreements. It does not relate to other claims. Those claims are governed by Massachusetts law because Massachusetts has the strongest connection to the transactions and communications at issue.

A.    <u>Massachusetts Law Governs The Claims Under The Guaranty, Despite
The Choice Of Law Provision, Because The State Of New York Lacks
Any Substantial Relationship To The Parties Or The Transaction.</u>

"Massachusetts allows contracting parties to choose the applicable law so long as

the transaction bears a reasonable relation to the state chosen." <u>Graham v. Malone</u>

<u>Freight Lines, Inc.</u>, 948 F. Supp. 1124, 1130 (D. MA 1996).  Under the Restatement

(Second) of Conflicts, section 187, "t[h]e law of the state chosen by the parties to govern

their contractual rights and duties will be applied … unless … the chosen state has no

substantial relationship to the parties or the transaction and there is no other reasonable

basis for the parties' choice."

The chosen state in this case, New York, has no substantial relationship to the

transaction at issue here.  None of the current parties is in New York.  GE Capital is in

Connecticut and the defendants are all in Massachusetts.  The only New York connection

is that one of the parties at the time the agreements were entered into was a division of a

company based in New York.  None of the negotiations, individuals involved, property

financed, or funds were in New York.  This single New York connection can hardly be

sufficient to give New York a substantial relationship to the parties or the transaction.[1]

B.    <u>Even If New York Law Governed Claims Under The Guaranties, The
Choice Of Laws Provision Does Not Apply To The Guarantors' Tort
Claims, Which Are Governed By The Laws Of Massachusetts, The State
With The Strongest Connection To The Parties And The Transactions.</u>

The choice of law provision in the guaranties does not refer to non-contractual

claims.  It states only as follows: "This Guaranty Agreement shall in all respects *be*

*governed by and construed in accordance with* the internal laws of the State of New

---

[1] Significantly, despite the presence of a New York forum selection provision in the guaranties, GE Capital
did not attempt to bring this action in that state.  Presumably, this decision was made because there is so
little connection to New York that the New York courts would have lacked personal jurisdiction.

York, without reference to principles of conflict of laws." Frank Sorensen Aff., Exs. E, F and G, ¶10 (emphasis added).

Although this case does include a claim to enforce the guaranty agreements, it also includes counterclaims sounding in tort for misrepresentation, intentional interference with advantageous business relations, and violations of Massachusetts General Laws, Chapter 93A. Those claims do not involve application or construction of the guaranty agreements and therefore are outside the scope of the choice of law provision.

In determining what law to apply to tort claims, Massachusetts courts "look to the law of the jurisdiction having the strongest interest in resolving the particular issue presented." Computer Systems Engineering, Inc. v. Qantel Corp., 571 F.Supp. 1365, 1368 (D.MA 1983). The Court should "identify the place or places where the relevant events and contacts between the parties took place." Id. The question here is not even close. Massachusetts is clearly the center of this dispute.

The misrepresentations and improper interference on which the Guarantors' claims are based occurred in Massachusetts. The threats made by GE Capital were made by persons in Connecticut to persons in Massachusetts. The negotiations for the loan and guaranties were conducted in Massachusetts by persons in Massachusetts and New Hampshire. The acts giving rise to the Chapter 93A claim were taken by persons in Connecticut against an entity in Massachusetts.

Massachusetts General Laws, chapter 93A, section 11 imposes liability on an entity that engages in unfair or deceptive conduct "primarily and substantially within the commonwealth." As the party claiming that chapter 93A does not apply, it is GE

8

Capital's burden to establish that the actions and transactions constituting the alleged

unfair or deceptive act or practice did not occur primarily and substantially within the

commonwealth.  Mass. G.L. c.93A, §11.

> The three factors considered by courts in determining whether action
> occurred primarily and substantially in Massachusetts are:  1) where the
> defendant committed the deceptive acts and practices;  2) where the
> plaintiff received and acted upon the deceptive or unfair statements;  and
> 3) the situs of the plaintiff's losses due to the unfair or deceptive acts or
> practices.

Arthur D. Little International, Inc. v. Dooyang Corp, 928 F. Supp. 1189, 1208 (D. MA

1996).  In the Arthur D. Little case, this Court held that although a Massachusetts

company's alleged deceptive acts and practices occurred in Massachusetts, the alleged

actionable conduct did not occur primarily and substantially in Massachusetts because the

party receiving and acting on the statements was in New York, Korea and Venezuela, and

any losses were suffered in one of those three places, not in Massachusetts.  Id.  Here, by

contrast, GE Capital's insistence on payment of amounts that were not owed and its

threats that resulted in the bankruptcy filing were received in Massachusetts.  The harm

was suffered here, not in Connecticut or New York.

## III.    THE DEFENDANTS ARE ENTITLED TO ASSERT DEFENSES AND COUNTERCLAIMS THAT CREATIVE PAPER COULD ASSERT.

Whether the laws of New York or Massachusetts govern, GE Capital is incorrect

when it argues that the Guarantors have no right to dispute the Debtor's liability.  Even if

the guaranty agreements are unconditional, the Guarantors have guarantied no more than

"the payment and performance of all indebtedness and obligations of [the Debtor] to

[Wentworth Capital] … under the [loan agreements]."  GE Capital still has to prove what

is owed, and the Guarantors have the right to dispute that.

As explained in the Guarantors' Rule 56.1 response, the existence of the defaults
GE Capital alleges is in dispute, as is the total amount owed by the Debtor. Further, to
the extent GE Capital relies on the Debtor's bankruptcy as the accelerating event, the
Debtor has demonstrated that that event was brought about by unfair and deceptive
actions of GE Capital (or, at the very least, the existence of an issue of material fact
concerning GE Capital's good faith).

As New York's highest court stated in one of the cases GE Capital relies on,
"[t]he guarantor is not liable when the principal is not bound." Walcutt v. Clevite Corp.,
191 N.E.2d 894, 897 (1963). Distinguishing between a guarantor's attempt to assert an
independent cause of action existing in favor of his principal from a guarantor's
defensive assertion of a failure of consideration or failure of performance by the creditor,
the court ruled that in the latter case a guarantor, "when sued alone by the creditor, can
successfully resist by showing that the creditor, on his part, totally failed to perform his
obligations to the principal." Id.

The cases relied upon by GE Capital do not preclude a guarantor from raising the
issues they have raised. Those cases involved counterclaims of a different nature. For
example, New Court Small Business Lending Corp. v. Grillers Casual Dining Group,
Inc., 272 N.Y.S.2d 699, 700-01 (A.D. 3 Dept. 2001), involved a claim of fraud in the
inducement of the underlying transaction. Marcus Dairy, Inc. v. Jacene Realty Corp.,
638 N.Y.S.2d 779, 780 (A.D. 2 Dept. 1996), involved a guarantor's attempt to assert that
the underlying obligor was entitled to receive a credit for defective inventory. Because
the guaranty in that case made no reference to any inventory sold pursuant to the
underlying agreement, the court held that that claim for a set off arose independently

10

from the guaranty and was therefore not available to the guarantor. Id.

Those cases are to be distinguished from cases like the present one, which does not involve a guarantor "arrogat[ing] to himself a right of election [of remedies] which his principal enjoys," see Walcutt, supra at 897, but rather involves a dispute over the amount owed by the principal debtor and allegations of fraud and improper interference by the creditor after the loan has been made.

An important case involving an unconditional guaranty, overlooked in GE Capital's summary judgment memorandum, is National Westminster Bank USA v. Ross, 676 F.Supp. 48 (S.D.N.Y. 1987). The guarantor in that case, like the Guarantors here, claimed he was not liable on the loans because of deceitful and improper actions by the creditor between the time the loan agreements were signed and the default, which the guarantor claimed were designed to ensure that the principal would default. Id. at 50. The guarantor claimed that the creditor had unilaterally reduced the amount advance rate on the principal debtor's inventory financing and established a freeze on the principal debtor's inventory financing account by the 10th of every month in order to ensure there would be money left in the account on the 30th of the month, when the principal debtor's installment payments were due. Id. at 52. The creditor moved to dismiss the guarantor's counterclaims, relying on a provision in the guaranty that the guarantor waived the right to interpose any counterclaim or setoffs of any kind. Id. at 52-53.

Denying the motion to dismiss, the court held that the defendant's allegation of fraud superseded his waiver of the right to assert counterclaims. Id. at 54. "Under New York law, while it is not violative of public policy to enforce waiver of the right to interpose counterclaims, nonetheless defenses based upon allegations of fraud may not be

waived." Id. at 53.

In this case, the Guarantors allege (and support with evidence) that GE Capital, knowing that the Debtor was in compliance with its obligations under the loan agreements, nevertheless insisted on payment of late fees that were not owed and claimed defaults that did not exist. Even if the guaranty agreements specifically waived the right to assert counterclaims or setoff — they do not — the Guarantors are not precluded from proceeding with their claims based on GE Capital's misrepresentations, improper interference, and unfair and deceptive conduct.

IV.     ISSUES OF MATERIAL FACT PRECLUDE ENTRY OF SUMMARY
        JUDGMENT ON THE GUARANTORS' COUNTERCLAIMS.

   A.     GE Capital Is Not Entitled To Summary Judgment On The Claims Of
          Reformation And Misrepresentation.

These claims involve the same facts. Assuming GE Capital is entitled to be treated as a party to the loan agreements, the manner in which the interest obligation was disclosed in the loan documents was misleading. Although the lender committed to lend the money at an interest rate of 10.85% (5% over the 5-year treasury rate), it used a higher rate in the actual loan agreements and failed to disclose the change. The Guarantors and the Debtor relied on this misrepresentation, signing a document that did not reflect what they had actually agreed to. See Nota Construction Corp. v. Keys Associates, Inc., 45 Mass. App. Ct. 15, 16-17 (deceit may be perpetrated by an implied as well as by an express representation).

Reformation is appropriate in the case of a mistake induced by or known to the other party, just as it is appropriate in the case of a mutual mistake. Mates v. Penn Mut.

Life Ins. Co., 316 Mass. 303, 306 (1941).[2]

B.    GE Capital Is Not Entitled To Summary Judgment On The Claims For Breach Of Contract And Breach Of The Implied Covenant Of Fair Dealing.

Whether the contracts at issue here were governed by New York or Massachusetts law, they included an implied covenant of good faith and fair dealing. See National Westminster Bank USA v. Ross, 676 F.Supp. 48, 54 (S.D.N.Y. 1987); Anthony's Pier 4, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991) ("Every contract implies good faith and fair dealing between the parties to it.")

GE Capital's bad faith actions, detailed in the Porter Affidavit, involved acting as fiscal agent without any right to do so, insisting on payment of amounts that were not owed, despite having been shown evidence of the Debtor's compliance with its obligations, and, ultimately, forcing the Debtor to have to file for bankruptcy to protect its assets against improper seizure. See generally, Porter Affidavit.

C.    GE Capital Is Not Entitled To Summary Judgment On The Claim For Intentional Interference With Advantageous Business Relations.

"Claims of intentional interference with contractual or advantageous relations require a showing that the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage." Buster v. George W. Moore, Inc., 438 Mass. 635, 652 (2003).

---

[2] GE Capital claims in it summary judgment memorandum to have relied on a statement in an October 1999 Acceptance Certificate signed by one of the Guarantors that the Debtor had no claim or defense against the secured party. Although the Guarantors dispute that that statement, signed before the money was advanced, excused the lender's use of the wrong interest rate in stating the repayment obligation, there is an issue of material fact concerning GE Capital's reliance. The Participation Agreements recite that GE Capital has not relied on the seller but has performed its own analysis of the Debtor. See Porter Aff., Exs. 9 and 10, section 4(a).

13

GE Capital argues that this claim is based on interference with the loan or guaranty agreements, and then explains why a claim for intentional interference does not apply in the case of interference with one's own contract. GE Capital misstates the Guarantors' claim.

At the time of GE Capital's aggressive and persistent demands that the Debtor pay it amounts that were not owed, the Guarantors all had ongoing business relationships with the Debtor. One guarantor was an affiliate doing business at the same location. The other guarantors were principals and employees of the Debtor. Forcing the Debtor into bankruptcy necessarily has an adverse effect on most of the Debtor's ongoing business relationships, including its relationship with the Guarantors.

To the extent GE Capital claims its conduct was not improper, that is a jury issue. The Guarantors have submitted sufficient evidence to demonstrate an issue of material fact as to GE Capital's conduct. As for GE Capital's motive, that is also an issue of fact to be explored in discovery.

D.    GE Capital Is Not Entitled To Summary Judgment On The Claim For Violations Of Mass. G.L. C.93A.

As discussed above, the choice of law provision in the guaranties does not preclude the chapter 93A claim or any other tort claims arising out of GE Capital's conduct after it claimed to have become fiscal agent.

The actions taken by GE Capital are detailed in the Porter Affidavit. They included insistence on payment of "late fees" despite the Debtor's timely compliance with its payment obligations, and trying to enforce agreements to which it was not a party and which it lacked any right to enforce. Improper actions taken in order to collect on a debt are actionable under c.93A. See Hanner v. Classic Autobody, Inc., 10 Mass. App.

14

Ct. 121, 122-23 (1980).

The Guarantors should be permitted to proceed on their chapter 93A claims.

V.    SUMMARY JUDGMENT SHOULD ENTER FOR CREATIVE PACKAGING
ON THE LEASE CLAIM

A.    <u>Creative Paper, the Debtor, leased the equipment, not Creative Packaging.</u>

Creative Packaging is named as lessor on the equipment lease as a result of a
mistake in the preparation of the document. Creative Paper is the lessee and the
documentation should have reflected that.

The equipment that is the subject of the lease is used in the cardboard
manufacturing process. It scans paper coming off another machine to determine its
thickness and moisture content. The equipment has never been used by Creative
Packaging, and was never intended to be used by Creative Packaging, and all payments
have been made by the Debtor, not Creative Packaging. See Porter Aff., ¶¶39-46.

As detailed in the Porter Affidavit, filed herewith, Creative Packaging was named
as the lessee as a result of a scrivener's error. The mutual mistake was not only on the
part of the lessee and the original lessor, but also GE Capital, which also understood that
Creative Paper was the intended lessee. See Porter Aff., ¶¶41-46. Because there was "a
mutual mistake in drafting the [lease] to express an agreement as to which there was no
misunderstanding," Creative Packaging has an equitable right to have the lease reformed
to reflect the actual agreement between the parties, "and that equitable right …
constitute[s] an unconditional and complete equitable defense to the plaintiff's claim."
<u>Mates v. Penn Mut. Life Ins. Co.</u>, 316 Mass. 303, 306 (1941).

Conclusion

For the reasons stated above, Hamilton, Perlman and Creative Packaging request

that GE Capital's summary judgment motion be denied.

Respectfully submitted,

David Burgess (BBO No. 553783)
9 Damonmill Square, Suite 5C
Concord, MA  01742-2864
978.371.1900

Dated:  May 20, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by mail-hand on ___ 5 20 04

16