UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>JAMES E. HAMILTON, RICHARD M. PERLMAN, and CREATIVE PACKAGING, INC.,<br><br>*Defendants.* | CIVIL ACTION NO.: 03-CV-12429-MLW |

**MEMORANDUM IN SUPPORT OF GENERAL ELECTRIC CAPITAL CORPORATION'S ASSENTED-TO MOTION TO STRIKE DEFENDANTS' JURY CLAIMS ON COUNTS I, II, AND III**

Plaintiff General Electric Capital Corporation ("GE Capital") submits this memorandum in support of its assented-to motion to strike the jury claims made by the defendants James E. Hamilton, Richard M. Perlman, and Creative Packaging, Inc. ("Defendants" or "Defendant Guarantors"), with respect to Counts I, II, and III of the First Amended Complaint, which seek to enforce certain Guaranty Agreements, described below.[1] By executing the Guaranty Agreement, the Defendant Guarantors each expressly, voluntarily and knowingly waived their right to a jury trial on these claims.

## BACKGROUND

GE Capital is a corporation organized under the laws of Delaware, with its principal place of business in Connecticut. Defendants Hamilton and Perlman are

individuals residing in Massachusetts. Creative Packaging is a Massachusetts corporation with its principal place of business located at 175 James Street, Worcester, Massachusetts. On information and belief, defendants Hamilton and Perlman are the sole shareholders of Creative Packaging.

On or about November 18, 1999, Creative Paper, an affiliate of Creative Packaging, entered into the following agreements with Wentworth Capital, a division of Charter Financial: a Master Loan and Security Agreement No. 4366 dated October 29, 1999, including a First Rider, Second Rider and Amendment to the Master Loan Agreement No. 4366; and a Loan Schedule 01 to the Master Loan and Security Agreement No. 4366, including an Amendment to Loan Schedule 01 to Master Loan and Security Agreement No. 4366 (these and the other pertinent Loan Documents are referred to below as the "Loan Documents"). Pursuant to Loan Schedule 01, Charter Financial extended equipment financing to Creative Paper in the principal amount of $6,500,000. Creative Paper agreed, among other things, to repay the loan through eighty-four (84) monthly installment payments of principal and interest.

To induce Charter Financial to enter into the Loan Documents and extend the equipment financing, Defendant Guarantors each executed an unconditional, absolute guaranty of the payment and performance by Creative Paper of all amounts due under the

---

[1] Count IV of the Complaint is a breach of contract claim against Creative Packaging, Inc., concerning a personal property lease. The pertinent contract in that claim, the lease, does not contain a jury waiver provision.

Loan Documents. *See* <u>Exhibits A</u>, <u>B</u>, and <u>C</u>.[2] Creative Packaging's Guaranty Agreement was executed by Hamilton, in his capacity as President. *See* <u>Exhibit C</u>.

Pursuant to Section 9 of the Guaranty Agreement, each Guarantor expressly waived all rights to a jury trial, as follows:

> GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, SUIT OR PROCEEDING COMMENCED BY OBLIGEE, OBLIGOR, GUARANTOR OR OTHERWISE IN CONNECTION WITH THIS GUARANTY AGREEMENT OR ANY OF THE AGREEMENTS. THIS WAIVER HAS BEEN SPECIFICALLY NEGOTIATED BY THE PARTIES WITH FULL COGNIZANCE AND UNDERSTANDING OF THEIR RIGHTS.

On or about November 19, 2001, GE Capital purchased and Charter assigned to GE Capital a participation interest in the Loan Documents and the Guaranty Agreements, pursuant to a Participation Agreement between Charter Financial and GE Capital. On or about December 7, 2001, GE Capital exercised certain of its rights under the Participation Agreement and became Fiscal Agent for all participants in the loan described in the Loan Documents. By the terms of the Participation Agreement, GE Capital, as Fiscal Agent, is responsible for, among other things, administration of the Loan Documents and the Guaranty Agreements, collection of all sums payable under the Loan Documents and the Guaranty Agreements, and enforcement of the Loan Documents and the Guaranty Agreements.

---

[2] The authenticity and terms of the Guaranty Agreements are not in dispute. That <u>Exhibits A</u>, <u>B</u>, and <u>C</u> are what they purport to be has been attested to in the Affidavit of Frank Sorensen, dated March 22, 2004, previously filed with this Court.

On or about October 13, 2003, Creative Paper filed for bankruptcy protection. Under the terms of the Guaranty Agreement, this immediately accelerated the Defendant Guarantors' obligations.

On November 21, 2003, GE Capital commenced this action against the Defendant Guarantors. On January 21, 2004, GE Capital filed its First Amended Complaint. On February 9, 2004, Defendant Guarantors filed their Answer, Counterclaim and Jury Trial Demand, in which they sought a jury trial of all claims so triable.

On May 23, 2005, the Court granted in part GE Capital's Motion for Summary Judgment, ordering that summary judgment shall enter against Defendants on Counts I, II, and III. Following a hearing on June 10, 2005, the Court scheduled a hearing on GE Capital's claim for damages on Counts I, II, and III, for August 15, 2005. On June 14, 2005, the Defendant Guarantors filed a motion seeking leave to file an Amended Answer that also sought a jury trial as to *inter alia* Counts I, II, and III.

## ARGUMENT

### THE DEFENDANT GUARANTORS KNOWINGLY AND VOLUNTARILY WAIVED THEIR RIGHT TO A JURY TRIAL ON COUNTS I, II, AND III OF THE FIRST AMENDED COMPLAINT.

The right to a jury in civil cases can be voluntarily waived by contract and such a waiver suffers from no constitutional or legal infirmity. *Seaboard Lumber Co. v. U.S.*, 903 F.2d 1560, *reh'g denied, cert. denied* 111 S. Ct. 1308, 499 U.S. 919, 113 L.Ed.2d 243 (Fed. Cir. 1990);[3] *Connecticut Nat'l Bank v. Smith*, 826 F. Supp. 57, 59 (D.R.I.

---

[3] The Seventh Amendment's right to a trial by jury in federal civil suits is a matter of federal, not state law, and therefore the choice of law provision in the Guaranty Agreements, which selected New York law, does not apply to this issue. *Simler v. Conner*, 372 U.S. 221, 83 S. Ct. 609, 9 L.Ed.2d 691 (1963).

1993). In circumstances similar to the case at hand, courts have routinely enforced contractual jury waivers in loan agreements and loan guaranties. *See, e.g., Okura & Co. v. Careau Group*, 783 F. Supp. 482, 489 (C.D. Cal. 1991); *National Westminster Bank v. Ross*, 130 B.R. 667 (S.D.N.Y. 1991); *Standard Wire & Cable Co. v. AmeriTrust Corp.*, 697 F. Supp. 368, 375 (C.D. Cal. 1988); *In re Reggie Packing Co.*, 671 F. Supp. 571, 574 (N.D. Ill. 1987); *Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248; 588 N.E.2d 705, 709 (1992).

In deciding whether to enforce a waiver of the right to a jury trial, the Court's chief concern is whether the party giving the waiver did so "knowingly and voluntarily." *Medical Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 19 (1st Cir. 2002). While there has been no discovery to date in this case, and GE Capital has no personal knowledge at this time of the circumstances under which the Guaranty Agreements were signed, GE Capital submits that the Guaranty Agreements themselves provide sufficient evidence for the Court to find that the jury waiver applies to Counts I, II, and III, and that the waivers were knowing and voluntary.

Counts I, II, and III of the Complaint seek to enforce the Guaranty Agreement against each of the Defendant Guarantors. Each Guaranty Agreement contains an express jury waiver at § 9, which provides as follows:

> GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, SUIT OR PROCEEDING COMMENCED BY OBLIGEE, OBLIGOR, GUARANTOR OR OTHERWISE IN CONNECTION WITH THIS GUARANTY AGREEMENT OR ANY OF THE AGREEMENTS. THIS WAIVER HAS BEEN SPECIFICALLY NEGOTIATED BY THE PARTIES WITH FULL COGNIZANCE AND UNDERSTANDING OF THEIR RIGHTS.

By its plain language this waiver encompasses the claims asserted in Counts I, II, and III. These three causes of action seek to enforce each Guarantor's obligations under the Guaranty Agreement, and § 9 broadly waives the right to a jury trial as to any proceeding commenced "in connection with the Guaranty Agreement." Simply put, the claims are being brought "in connection with the Guaranty Agreements," and § 9 waives the right to a jury trial for such claims.

The only issue, then, is whether defendants entered into the jury waiver "knowingly and voluntarily." *Medical Air Tech. Corp.*, 303 F.3d at 19. The best evidence that this is so is the waiver's plain terms, in which the parties to the waiver expressly represent that the "waiver has been *specifically negotiated* by the parties with *full cognizance and understanding of their rights*" (emphasis supplied). Given such language, it cannot be fairly said that the Defendant Guarantors lacked an appreciation of the waiver they were giving; in any event, the Guarantors should not be heard to argue to the contrary, as any such argument would presume by definition that Defendants *misrepresented* their "understanding of their rights" at the time they executed the Guaranty Agreement.[4]

Nor is the jury waiver "buried" in a lengthy document. Each Guaranty Agreement is a short, two-page instrument, and it cannot be fairly said that the jury waiver was hidden in such a brief document. The jury waiver appears on the second page of the document, not far above the signature lines that each defendant executed. Furthermore,

---

[4] It should also be noted that GE Capital came to the Guaranty Agreements and the other Loan Documents as a bona fide third party who purchased its position for value. Defendants should not be permitted to prejudice GE Capital by arguing, many years after they executed the Guaranty Agreement, and many years after GE Capital purchased its participation interest, that the jury waiver did not accurately reflect their understanding at the time.

the jury waiver appears in prominent, capital letters in each of the Guaranty Agreements, in a typeface and style that is sufficiently distinct from the remainder of the text so as to call particular attention to the waiver and supply particular emphasis to the waiver's unique importance. *See Luis Acosta, Inc. v. Citibank, N.A.*, 920 F. Supp. 15, 18 (D.P.R. 1996) (court considers, among other factors, whether the waiver appears in conspicuous lettering or is buried deep in contract). Indeed, Courts have enforced waivers that were less conspicuous than that found in the Guaranty Agreements. *See Connecticut Nat'l Bank*, 826 F. Supp. at 60-61 (discussing and citing several cases concerning the conspicuousness of jury waiver provisions).

## CONCLUSION

For these reasons, GE Capital asks this Court to grant GE Capital's Assented-To Motion to Strike Defendants' Jury Claim as to Counts I, II, and III.

> GENERAL ELECTRIC CAPITAL
> CORPORATION, a Delaware corporation
>
> By its attorneys,
>
> /s/ C. Dylan Sanders
> C. Dylan Sanders (BBO #630668)
> DLA PIPER RUDNICK GRAY CARY US LLP
> One International Place, 21st Floor
> 100 Oliver Street
> Boston, MA  02110-2613
> (617) 406-6000 (*telephone*)
> (617) 406-6100 (*fax*)

Dated:  June 23, 2005

# EXHIBIT A

**Guaranty Agreement**

Name and address of Guarantor     : James E. Hamilton
                                  : 23 Annie Moore Road
                                  : Bolton, MA 01740
S.S.N. / FID                      : 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

## RECITALS

A.  Pursuant to the terms of the equipment leases, purchase money security agreements and/or other agreements (collectively, the "Agreements) which have been or will be entered into between Wentworth Capital, a division of Charter Financial, Inc., 530 Fifth Avenue, New York, NY 10036 (hereinafter the "Obligee") and Creative Paper, Inc. (hereinafter the "Obligor"), Obligor has incurred or will incur indebtedness to Obligee as more fully set forth in the Agreements.

B.  Obligee has required, as a condition of entering into the Agreements, that the payment and performance of all indebtedness and obligations of Obligor to Obligee of every kind and description, direct or indirect, primary or secondary, absolute or contingent or due or to become due, whether by acceleration or otherwise, and any and all renewals, modifications, supplements, amendments and extensions of the foregoing, whether now or thereafter arising under the Agreements, or any other present or future agreement, document or instrument now or hereafter executed and delivered by Obligor to Obligee or any assignee of Obligee, including, without limitation any equipment leases, purchase money security agreements, loans, chattel mortgage loans, real estate loans, advances, payments, extensions of credit, benefits or financial accommodations whether or not arising under or in connection with the Agreements, or by operation of law, whether or not evidenced by writing, or otherwise arising (all of such indebtedness and obligations being hereinafter referred to as the "Indebtedness"), be guaranteed by Guarantor.

## TERMS AND CONDITIONS

1.  *Guaranty of Payment.* In order to induce Obligee to enter into the Agreements and in consideration of $10.00 and other good and valuable consideration paid by Obligee to Guarantor, receipt of which is hereby acknowledged, Guarantor hereby unconditionally guarantees to Obligee (a) the due and punctual payment of the Indebtedness, when and as the same shall become due and payable whether at maturity or by required prepayment, notice of optional prepayment, acceleration or otherwise and (b) the due and punctual performance of all other obligations arising under or relating to the Indebtedness. Such guaranty is an absolute, unconditional, continuing guaranty of payment and not of collectibility, and is in no way conditioned or contingent upon any attempt to collect from Obligor or from any other person, firm or corporation obligated with respect to, or any guarantor of, the Indebtedness or upon any other condition or contingency. In case Obligor shall fail to pay punctually any of the Indebtedness, or any premium or interest thereon, when and as the same shall become due and payable, Guarantor will upon demand immediately pay the same to Obligee.

2.  *Costs and Expenses.* Guarantor will pay all costs and expenses incurred by or on behalf of Obligee (including, without limitation, reasonable attorneys' fees and expenses) in enforcing the obligations of Guarantor hereunder, and the obligations of Obligor with respect to the Indebtedness.

3.  *Obligations of Guarantor Not Affected.* The obligations of Guarantor shall remain in full force and effect without regard to and shall not be affected or impaired in any respect by: (a) any assignment, transfer, amendment, modification, rescission or cancellation of or addition or supplement to the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (b) the invalidity, illegality or unenforceability of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (c) any exercise, non-exercise, waiver, release or cancellation by Obligee of any right, remedy, power or privilege under or in respect of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness, including, without limitation, the taking, release, discharge, exchange, surrender or disposition of collateral held for the Indebtedness; (d) any consent, extension, indulgence, or other action, inaction or omission under or in respect of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (e) the death of Guarantor; (f) any purported termination by Guarantor of this Guaranty Agreement not expressly permitted hereby; or (g) any other cause or circumstance whatsoever, including, without limitation, any other act, thing, omission or delay which would or might in any manner or to any extent vary the risk of Guarantor or which would or might otherwise operate as a discharge of Guarantor as a matter of law; whether or not Guarantor shall have notice or knowledge of any of the foregoing. This Guaranty Agreement shall remain in full force and effect and shall not be terminable except with the prior written consent of Obligee so long as any agreement or arrangement between Obligee and Obligor or any renewals, continuations, modifications, supplements and amendments thereof shall remain in force and effect. Thereafter this instrument shall continue in full force and effect until terminated by the actual receipt by Obligee by registered or certified mail of notice of termination from Guarantor or from the legal representative of any deceased Guarantor; such termination shall be applicable only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to such termination shall not be affected.

4.  *Waivers.* The following are unconditionally waived by Guarantor: (a) notice of any of the matters referred to in Section 3, (b) all notices which may be required by statute, rule or law or otherwise to preserve any rights of Obligee against Obligor or Guarantor, including, without limitation, notice of presentment and protest to, and demand and payment from, Obligor or Guarantor (c) any right to the enforcement, assertion, exercise or non-exercise by Obligee of any right, power or remedy conferred in the Agreement or any other agreement whatsoever, (d) any right of subrogation, reimbursement or indemnity, and any right of recourse to or with respect to any assets or property of Obligor or to any collateral for any Indebtedness, unless and until Obligee shall have received and retained full payment of all of the Indebtedness, and (e) any requirement of diligence on the part of Obligee.

5.  *Security.* All sums at any time to the credit of Guarantor and any property of Guarantor at any time in Obligee's possession shall be deemed held by Obligee as security for any and all of Guarantor's obligations to Obligee and to any company or companies which may now or at any time be Obligee's parent, subsidiary or affiliate, no matter how or when arising and whether under this or any other instruments, agreements or otherwise. Upon the nonpayment of any obligation of Obligor to Obligee, full power and authority are hereby given Obligee to sell, assign, and deliver the whole or any of the property of Guarantor which Obligee holds as security, at any broker's board, or at public or private sale (at the option of Obligee) either for cash or on credit or for future delivery, without assumption of any credit risk, and without demand, advertisement or notice of any kind, all of which are hereby expressly waived. No delay on the part of Obligee in exercising any power of sale or any other rights or options hereunder, and no notice or demand, which may be given to or made upon Guarantor by Obligee with respect to any power of sale or other right or option hereunder, shall constitute a waiver thereof, or limit or impair Obligee's right to take any action or to exercise any power of sale or any other rights hereunder, without notice or demand, or prejudice Obligee's rights as against Guarantor in any respect. At any sale hereunder, Obligee may purchase the whole or any part of the property sold, free from any right of redemption on the part of Guarantor, all such rights being also hereby waived and released. In the event of any sale or other disposition of any of the property aforesaid, after deducting all costs or expenses of every kind for care,

safekeeping, collection, sale, delivery or otherwise, Obligee shall, after applying the balance of the proceeds of the sale or other disposition to the payment or reduction (in whole or in part) of the principal or interest (at the option of Obligee) then owing on the obligations of Obligor, and after making proper allowance for interest on obligations of Obligor not then due, return any excess to Guarantor, all without prejudice to the rights of Obligee as against Guarantor with respect to any and all amounts which may then be or remain unpaid on any obligations of Obligor.

6. *Subordination.* Any and all rights of Guarantor to the payment or performance of any and all present and future indebtedness or other obligations of Obligor to Guarantor shall be subordinate and subject to the rights of Obligee to the full payment of the Indebtedness and all of the Indebtedness shall be paid in full and shall be retained by Obligee before any payment of such indebtedness from Obligor to Guarantor shall be made. In the event that any payment or distribution shall be received by Guarantor contrary to the provisions of the preceding sentence, whether in connection with any insolvency, bankruptcy, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding involving Obligor, or otherwise, such payment or distribution shall be held in trust by Guarantor and shall be promptly paid over to Obligee for application to the Indebtedness.

7. *Bankruptcy or Insolvency.* Guarantor agrees that if Obligor or Guarantor should at any time become insolvent or make a general assignment for the benefit of its creditor, or if a petition in bankruptcy or any insolvency, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding shall be filed or commenced by, against or in respect of Obligor or Guarantor, or if an order for relief shall be entered in respect of Obligor or Guarantor in any case under the Bankruptcy Code, the obligations of Guarantor hereunder shall remain in full force and effect; and any and all obligations of Obligor and Guarantor to Obligee shall, at the option of Obligee, forthwith become due and payable without notice.

8. *Notices.* All notices and other communications hereunder shall be in writing and shall be delivered or mailed by certified or registered mail, return receipt requested, addressed to the respective addresses of the parties hereto designated above in this Guaranty Agreement, or addressed to any such party at such other address such party shall hereafter have furnished to the other party in writing.

9. *Consent to Jurisdiction; Waiver of Jury Trial.* Guarantor hereby irrevocably consents to the jurisdiction of the courts of the State of New York and of any federal court located in such state in connection with any action or proceeding arising out of or relating to this Guaranty Agreement. Any such action or proceeding will be maintained in the United States District Court for the Southern District of New York or in any court of the State of New York located in the County of New York and Guarantor waives any objections based upon venue or *forum non conveniens* in connection with any such action or proceeding. Guarantor consents that process in any such action or proceeding may be served upon it by registered mail directed to Guarantor at its address set forth at the head of the Guaranty Agreement or in any other manner permitted by applicable law or rules of court. Guarantor hereby irrevocably appoints the Secretary of State of the State of New York as its agent to receive service of process in any such action or proceeding. GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, SUIT OR PROCEEDING COMMENCED BY OBLIGEE, OBLIGOR, GUARANTOR OR OTHERWISE IN CONNECTION WITH THIS GUARANTY AGREEMENT OR ANY OF THE AGREEMENTS. THIS WAIVER HAS BEEN SPECIFICALLY NEGOTIATED BY THE PARTIES WITH FULL COGNIZANCE AND UNDERSTANDING OF THEIR RIGHTS.

10. *Law of New York.* This Guaranty Agreement shall in all respects be governed by and construed in accordance with the internal laws of the State of New York, without reference to principles of conflict of laws.

11. *Miscellaneous.* Neither this Guaranty Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. All the terms of this Guaranty Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns, and in particular shall be enforceable by any holder or holders from time to time of the Indebtedness or any part thereof. Guarantor agrees and consents that Obligee shall have the right to assign or transfer this Guaranty Agreement or any of Obligee's rights or powers hereunder to any other person, firm or corporation and such assignment shall not affect the liability of Guarantor hereunder. The books and records of Obligee showing the account between Obligee and Obligor shall be admissible in evidence in any action or proceeding, shall be binding upon Guarantor for the purpose of establishing the items therein set forth, and shall constitute prima facie proof thereof. In the event that there shall be more than one Guarantor, the obligations of each Guarantor shall be both joint and several.

Guarantor agrees to all the provisions set forth above. This agreement is executed pursuant to due authorization.

GUARANTOR ACKNOWLEDGES RECEIPT OF A SIGNED TRUE COPY OF THIS AGREEMENT.

Date __October 29__ 1999

Accepted on __November 18__, 1999

James E. Hamilton (Guarantor)
By: _____

Attest: _____ [Seal]
~~Notary Public~~ / Witness

Wentworth Capital, a division of Charter Financial, Inc. (Obligee)
By: _____
Its __Executive Vice President__
(Title of Officer)

# EXHIBIT B

## Guaranty Agreement

Name and address of Guarantor : Richard M. Perlman
: 275 Country Club Road
: Newton, MA 02159
S.S.N. / FID : 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

### RECITALS

A. Pursuant to the terms of the equipment leases, purchase money security agreements and/or other agreements (collectively, the "Agreements) which have been or will be entered into between Wentworth Capital, a division of Charter Financial, Inc., 530 Fifth Avenue, New York, NY 10036 (hereinafter the "Obligee") and Creative Paper, Inc. (hereinafter the "Obligor"), Obligor has incurred or will incur Indebtedness to Obligee as more fully set forth in the Agreements.

B. Obligee has required, as a condition of entering into the Agreements, that the payment and performance of all indebtedness and obligations of Obligor to Obligee of every kind and description, direct or indirect, primary or secondary, absolute or contingent or due or to become due, whether by acceleration or otherwise, and any and all renewals, modifications, supplements, amendments and extensions of the foregoing, whether now or thereafter arising under the Agreements, or any other present or future agreement, document or instrument now or hereafter executed and delivered by Obligor to Obligee or any assignee of Obligee, including, without limitation any equipment leases, purchase money security agreements, loans, chattel mortgage loans, real estate loans, advances, payments, extensions of credit, benefits or financial accommodations whether or not arising under or in connection with the Agreements, or by operation of law, whether or not evidenced by writing, or otherwise arising (all of such indebtedness and obligations being hereinafter referred to as the "Indebtedness"), be guaranteed by Guarantor.

### TERMS AND CONDITIONS

1. *Guaranty of Payment.* In order to induce Obligee to enter into the Agreements and in consideration of $10.00 and other good and valuable consideration paid by Obligee to Guarantor, receipt of which is hereby acknowledged, Guarantor hereby unconditionally guarantees to Obligee (a) the due and punctual payment of the Indebtedness, when and as the same shall become due and payable whether at maturity or by required prepayment, notice of optional prepayment, acceleration or otherwise and (b) the due and punctual performance of all other obligations arising under or relating to the Indebtedness. Such guaranty is an absolute, unconditional, continuing guaranty of payment and not of collectibility, and is in no way conditioned or contingent upon any attempt to collect from Obligor or from any other person, firm or corporation obligated with respect to, or any guarantor of, the Indebtedness or upon any other condition or contingency. In case Obligor shall fail to pay punctually any of the Indebtedness, or any premium or interest thereon, when and as the same shall become due and payable, Guarantor will upon demand immediately pay the same to Obligee.

2. *Costs and Expenses.* Guarantor will pay all costs and expenses incurred by or on behalf of Obligee (including, without limitation, reasonable attorneys' fees and expenses) in enforcing the obligations of Guarantor hereunder, and the obligations of Obligor with respect to the Indebtedness.

3. *Obligations of Guarantor Not Affected.* The obligations of Guarantor shall remain in full force and effect without regard to and shall not be affected or impaired in any respect by: (a) any assignment, transfer, amendment, modification, rescission or cancellation of or addition or supplement to the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (b) the invalidity, illegality or unenforceability of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (c) any exercise, non-exercise, waiver, release or cancellation by Obligee of any right, remedy, power or privilege under or in respect of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness, including, without limitation, the taking, release, discharge, exchange, surrender or disposition of collateral held for the Indebtedness; (d) any consent, extension, indulgence, or other action, inaction or omission under or in respect of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (e) the death of Guarantor; (f) any purported termination by Guarantor of this Guaranty Agreement not expressly permitted hereby; or (g) any other cause or circumstance whatsoever, including, without limitation, any other act, thing, omission or delay which would or might in any manner or to any extent vary the risk of Guarantor or which would or might otherwise operate as a discharge of Guarantor as a matter of law; whether or not Guarantor shall have notice or knowledge of any of the foregoing. This Guaranty Agreement shall remain in full force and effect and shall not be terminable except with the prior written consent of Obligee so long as any agreement or arrangement between Obligee and Obligor or any renewals, continuations, modifications, supplements and amendments thereof shall remain in force and effect. Thereafter this instrument shall continue in full force and effect until terminated by the actual receipt by Obligee by registered or certified mail of notice of termination from Guarantor or from the legal representative of any deceased Guarantor; such termination shall be applicable only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to such termination shall not be affected.

4. *Waivers.* The following are unconditionally waived by Guarantor: (a) notice of any of the matters referred to in Section 3, (b) all notices which may be required by statute, rule or law or otherwise to preserve any rights of Obligee against Obligor or Guarantor, including, without limitation, notice of presentment and protest to, and demand and payment from, Obligor or Guarantor (c) any right to the enforcement, assertion, exercise or non-exercise by Obligee of any right, power or remedy conferred in the Agreement or any other agreement whatsoever, (d) any right of subrogation, reimbursement or indemnity, and any right of recourse to or with respect to any assets or property of Obligor or to any collateral for any Indebtedness, unless and until Obligee shall have received and retained full payment of all of the Indebtedness, and (e) any requirement of diligence on the part of Obligee.

5. *Security.* All sums at any time to the credit of Guarantor and any property of Guarantor at any time in Obligee's possession shall be deemed held by Obligee as security for any and all of Guarantor's obligations to Obligee and to any company or companies which may now or at any time be Obligee's parent, subsidiary or affiliate, no matter how or when arising and whether under this or any other instruments, agreements or otherwise. Upon the nonpayment of any obligation of Obligor to Obligee, full power and authority are hereby given Obligee to sell, assign, and deliver the whole or any of the property of Guarantor which Obligee holds as security, at any broker's board, or at public or private sale (at the option of Obligee) either for cash or on credit or for future delivery, without assumption of any credit risk, and without demand, advertisement or notice of any kind, all of which are hereby expressly waived. No delay on the part of Obligee in exercising any power of sale or any other rights or options hereunder, and no notice or demand, which may be given to or made upon Guarantor by Obligee with respect to any power of sale or other right or option hereunder, shall constitute a waiver thereof, or limit or impair Obligee's right to take any action or to exercise any power of sale or any other rights hereunder, without notice or demand, or prejudice Obligee's rights as against Guarantor in any respect. At any sale hereunder, Obligee may purchase the whole or any part of the property sold, free from any right of redemption on the part of Guarantor, all such rights being also hereby waived and released. In the event of any sale or other disposition of any of the property aforesaid, after deducting all costs or expenses of every kind for care,

safekeeping, collection, sale, delivery or otherwise, Obligee shall, after applying the balance of the proceeds of the sale or other disposition to the payment or reduction (in whole or in part) of the principal or interest (at the option of Obligee) then owing on the obligations of Obligor, and after making proper allowance for interest on obligations of Obligor not then due, return any excess to Guarantor, all without prejudice to the rights of Obligee as against Guarantor with respect to any and all amounts which may then be or remain unpaid on any obligations of Obligor.

6. *Subordination.* Any and all rights of Guarantor to the payment or performance of any and all present and future Indebtedness or other obligations of Obligor to Guarantor shall be subordinate and subject to the rights of Obligee to the full payment of the Indebtedness and all of the Indebtedness shall be paid in full and shall be retained by Obligee before any payment of such Indebtedness from Obligor to Guarantor shall be made. In the event that any payment or distribution shall be received by Guarantor contrary to the provisions of the preceding sentence, whether in connection with any insolvency, bankruptcy, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding involving Obligor, or otherwise, such payment or distribution shall be held in trust by Guarantor and shall be promptly paid over to Obligee for application to the Indebtedness.

7. *Bankruptcy or Insolvency.* Guarantor agrees that if Obligor or Guarantor should at any time become insolvent or make a general assignment for the benefit of its creditor, or if a petition in bankruptcy or any insolvency, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding shall be filed or commenced by, against or in respect of Obligor or Guarantor, or if an order for relief shall be entered in respect of Obligor or Guarantor in any case under the Bankruptcy Code, the obligations of Guarantor hereunder shall remain in full force and effect; and any and all obligations of Obligor and Guarantor to Obligee shall, at the option of Obligee, forthwith become due and payable without notice.

8. *Notices.* All notices and other communications hereunder shall be in writing and shall be delivered or mailed by certified or registered mail, return receipt requested, addressed to the respective addresses of the parties hereto designated above in this Guaranty Agreement, or addressed to any such party at such other address such party shall hereafter have furnished to the other party in writing.

9. *Consent to Jurisdiction; Waiver of Jury Trial.* Guarantor hereby irrevocably consents to the jurisdiction of the courts of the State of New York and of any federal court located in such state in connection with any action or proceeding arising out of or relating to this Guaranty Agreement. Any such action or proceeding will be maintained in the United States District Court for the Southern District of New York or in any court of the State of New York located in the County of New York and Guarantor waives any objections based upon venue or *forum non conveniens* in connection with any such action or proceeding. Guarantor consents that process in any such action or proceeding may be served upon it by registered mail directed to Guarantor at its address set forth at the head of the Guaranty Agreement or in any other manner permitted by applicable law or rules of court. Guarantor hereby irrevocably appoints the Secretary of State of the State of New York as its agent to receive service of process in any such action or proceeding. GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, SUIT OR PROCEEDING COMMENCED BY OBLIGEE, OBLIGOR, GUARANTOR OR OTHERWISE IN CONNECTION WITH THIS GUARANTY AGREEMENT OR ANY OF THE AGREEMENTS. THIS WAIVER HAS BEEN SPECIFICALLY NEGOTIATED BY THE PARTIES WITH FULL COGNIZANCE AND UNDERSTANDING OF THEIR RIGHTS.

10. *Law of New York.* This Guaranty Agreement shall in all respects be governed by and construed in accordance with the internal laws of the State of New York, without reference to principles of conflict of laws.

11. *Miscellaneous.* Neither this Guaranty Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. All the terms of this Guaranty Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns, and in particular shall be enforceable by any holder or holders from time to time of the Indebtedness or any part thereof. Guarantor agrees and consents that Obligee shall have the right to assign or transfer this Guaranty Agreement or any of Obligee's rights or powers hereunder to any other person, firm or corporation and such assignment shall not affect the liability of Guarantor hereunder. The books and records of Obligee showing the account between Obligee and Obligor shall be admissible in evidence in any action or proceeding, shall be binding upon Guarantor for the purpose of establishing the items therein set forth, and shall constitute prima facie proof thereof. In the event that there shall be more than one Guarantor, the obligations of each Guarantor shall be both joint and several.

Guarantor agrees to all the provisions set forth above. This agreement is executed pursuant to due authorization.

GUARANTOR ACKNOWLEDGES RECEIPT OF A SIGNED TRUE COPY OF THIS AGREEMENT.

Date October 29, 1999

Richard M. Perlman (Guarantor)
By: _____

Attest: _____ [Seal]
~~Notary Public~~ Witness

Accepted on November 18, 1999

Wentworth Capital, a division of Charter Financial, Inc. (Obligee)
By: _____
Its Executive Vice President
(Title of Officer)

# EXHIBIT C

**Guaranty Agreement**

Name and address of Guarantor      : Creative Packaging, Inc.
: 175 James Street
: Worcester, MA 01603
S.S.N. / FID                       : 04-2550623

## RECITALS

A.  Pursuant to the terms of the equipment leases, purchase money security agreements and/or other agreements (collectively, the "Agreements) which have been or will be entered into between Wentworth Capital, a division of Charter Financial, Inc., 530 Fifth Avenue, New York, NY 10036 (hereinafter the "Obligee") and Creative Paper, Inc. (hereinafter the "Obligor"), Obligor has incurred or will incur indebtedness to Obligee as more fully set forth in the Agreements.

B.  Obligee has required, as a condition of entering into the Agreements, that the payment and performance of all indebtedness and obligations of Obligor to Obligee of every kind and description, direct or indirect, primary or secondary, absolute or contingent or due or to become due, whether by acceleration or otherwise, and any and all renewals, modifications, supplements, amendments and extensions of the foregoing, whether now or thereafter arising under the Agreements, or any other present or future agreement, document or instrument now or hereafter executed and delivered by Obligor to Obligee or any assignee of Obligee, including, without limitation any equipment leases, purchase money security agreements, loans, chattel mortgage loans, real estate loans, advances, payments, extensions of credit, benefits or financial accommodations whether or not arising under or in connection with the Agreements, or by operation of law, whether or not evidenced by writing, or otherwise arising (all of such indebtedness and obligations being hereinafter referred to as the "Indebtedness"), be guaranteed by Guarantor.

## TERMS AND CONDITIONS

1.  *Guaranty of Payment.* In order to induce Obligee to enter into the Agreements and in consideration of $10.00 and other good and valuable consideration paid by Obligee to Guarantor, receipt of which is hereby acknowledged, Guarantor hereby unconditionally guarantees to Obligee (a) the due and punctual payment of the Indebtedness, when and as the same shall become due and payable whether at maturity or by required prepayment, notice of optional prepayment, acceleration or otherwise and (b) the due and punctual performance of all other obligations arising under or relating to the Indebtedness. Such guaranty is an absolute, unconditional, continuing guaranty of payment and not of collectibility, and is in no way conditioned or contingent upon any attempt to collect from Obligor or from any other person, firm or corporation obligated with respect to, or any guarantor of, the Indebtedness or upon any other condition or contingency. In case Obligor shall fail to pay punctually any of the Indebtedness, or any premium or interest thereon, when and as the same shall become due and payable, Guarantor will upon demand immediately pay the same to Obligee.

2.  *Costs and Expenses.* Guarantor will pay all costs and expenses incurred by or on behalf of Obligee (including, without limitation, reasonable attorneys' fees and expenses) in enforcing the obligations of Guarantor hereunder, and the obligations of Obligor with respect to the Indebtedness.

3.  *Obligations of Guarantor Not Affected.* The obligations of Guarantor shall remain in full force and effect without regard to and shall not be affected or impaired in any respect by: (a) any assignment, transfer, amendment, modification, rescission or cancellation of or addition or supplement to the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (b) the invalidity, illegality or unenforceability of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (c) any exercise, non-exercise, waiver, release or cancellation by Obligee of any right, remedy, power or privilege under or in respect of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness, including, without limitation, the taking, release, discharge, exchange, surrender or disposition of collateral held for the Indebtedness; (d) any consent, extension, indulgence, or other action, inaction or omission under or in respect of the Agreements or any other agreement or guaranty in respect of the Indebtedness or collateral held for the Indebtedness; (e) the death of Guarantor; (f) any purported termination by Guarantor of this Guaranty Agreement not expressly permitted hereby; or (g) any other cause or circumstance whatsoever, including, without limitation, any other act, thing, omission or delay which would or might in any manner or to any extent vary the risk of Guarantor or which would or might otherwise operate as a discharge of Guarantor as a matter of law; whether or not Guarantor shall have notice or knowledge of any of the foregoing.  This Guaranty Agreement shall remain in full force and effect and shall not be terminable except with the prior written consent of Obligee so long as any agreement or arrangement between Obligee and Obligor or any renewals, continuations, modifications, supplements and amendments thereof shall remain in force and effect. Thereafter this instrument shall continue in full force and effect until terminated by the actual receipt by Obligee by registered or certified mail of notice of termination from Guarantor or from the legal representative of any deceased Guarantor; such termination shall be applicable only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to such termination shall not be affected.

4.  *Waivers.* The following are unconditionally waived by Guarantor: (a) notice of any of the matters referred to in Section 3, (b) all notices which may be required by statute, rule or law or otherwise to preserve any rights of Obligee against Obligor or Guarantor, including, without limitation, notice of presentment and protest to, and demand and payment from, Obligor or Guarantor (c) any right to the enforcement, assertion, exercise or non-exercise by Obligee of any right, power or remedy conferred in the Agreement or any other agreement whatsoever, (d) any right of subrogation, reimbursement or indemnity, and any right of recourse to or with respect to any assets or property of Obligor or to any collateral for any Indebtedness, unless and until Obligee shall have received and retained full payment of all of the Indebtedness, and (e) any requirement of diligence on the part of Obligee.

5.  *Security.* All sums at any time to the credit of Guarantor and any property of Guarantor at any time in Obligee's possession shall be deemed held by Obligee as security for any and all of Guarantor's obligations to Obligee and to any company or companies which may now or at any time be Obligee's parent, subsidiary or affiliate, no matter how or when arising and whether under this or any other instruments, agreements or otherwise. Upon the nonpayment of any obligation of Obligor to Obligee, full power and authority are hereby given Obligee to sell, assign, and deliver the whole or any of the property of Guarantor which Obligee holds as security, at any broker's board, or at public or private sale (at the option of Obligee) either for cash or on credit or for future delivery, without assumption of any credit risk, and without demand, advertisement or notice of any kind, all of which are hereby expressly waived. No delay on the part of Obligee in exercising any power of sale or any other rights or options hereunder, and no notice or demand, which may be given to or made upon Guarantor by Obligee with respect to any power of sale or other right or option hereunder, shall constitute a waiver thereof, or limit or impair Obligee's right to take any action or to exercise any power of sale or any other rights hereunder, without notice or demand, or prejudice Obligee's rights as against Guarantor in any respect. At any sale hereunder, Obligee may purchase the whole or any part of the property sold, free from any right of redemption on the part of Guarantor, all such rights being also hereby waived and released. In the event of any sale or other disposition of any of the property aforesaid, after deducting all costs or expenses of every kind for care, safekeeping, collection, sale, delivery or otherwise, Obligee shall, after applying the balance of the proceeds of the sale or other disposition to the payment or reduction (in whole or in part) of the principal or interest (at the option of Obligee) then owing on the obligations of Obligor, and after making proper allowance for interest on obligations of Obligor not then due, return any excess to Guarantor, all without prejudice to the rights of Obligee as against Guarantor with respect to any and all amounts which may then be or remain unpaid on any obligations of Obligor.

6. *Subordination.* Any and all rights of Guarantor to the payment or performance of any and all present and future indebtedness or other obligations of Obligor to Guarantor shall be subordinate and subject to the rights of Obligee to the full payment of the Indebtedness and all of the Indebtedness shall be paid in full and shall be retained by Obligee before any payment of such indebtedness from Obligor to Guarantor shall be made. In the event that any payment or distribution shall be received by Guarantor contrary to the provisions of the preceding sentence, whether in connection with any insolvency, bankruptcy, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding involving Obligor, or otherwise, such payment or distribution shall be held in trust by Guarantor and shall be promptly paid over to Obligee for application to the Indebtedness.

7. *Bankruptcy or Insolvency.* Guarantor agrees that if Obligor or Guarantor should at any time become insolvent or make a general assignment for the benefit of its creditor, or if a petition in bankruptcy or any insolvency, liquidation, reorganization, arrangement, readjustment, composition, dissolution or other similar proceeding shall be filed or commenced by, against or in respect of Obligor or Guarantor, or if an order for relief shall be entered in respect of Obligor or Guarantor in any case under the Bankruptcy Code, the obligations of Guarantor hereunder shall remain in full force and effect; and any and all obligations of Obligor and Guarantor to Obligee shall, at the option of Obligee, forthwith become due and payable without notice.

8. *Notices.* All notices and other communications hereunder shall be in writing and shall be delivered or mailed by certified or registered mail, return receipt requested, addressed to the respective addresses of the parties hereto designated above in this Guaranty Agreement, or addressed to any such party at such other address such party shall hereafter have furnished to the other party in writing.

9. *Consent to Jurisdiction; Waiver of Jury Trial.* Guarantor hereby irrevocably consents to the jurisdiction of the courts of the State of New York and of any federal court located in such state in connection with any action or proceeding arising out of or relating to this Guaranty Agreement. Any such action or proceeding will be maintained in the United States District Court for the Southern District of New York or in any court of the State of New York located in the County of New York and Guarantor waives any objections based upon venue or *forum non conveniens* in connection with any such action or proceeding. Guarantor consents that process in any such action or proceeding may be served upon it by registered mail directed to Guarantor at its address set forth at the head of the Guaranty Agreement or in any other manner permitted by applicable law or rules of court. Guarantor hereby irrevocably appoints the Secretary of State of the State of New York as its agent to receive service of process in any such action or proceeding. GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, SUIT OR PROCEEDING COMMENCED BY OBLIGEE, OBLIGOR, GUARANTOR OR OTHERWISE IN CONNECTION WITH THIS GUARANTY AGREEMENT OR ANY OF THE AGREEMENTS. THIS WAIVER HAS BEEN SPECIFICALLY NEGOTIATED BY THE PARTIES WITH FULL COGNIZANCE AND UNDERSTANDING OF THEIR RIGHTS.

10. *Law of New York.* This Guaranty Agreement shall in all respects be governed by and construed in accordance with the internal laws of the State of New York, without reference to principles of conflict of laws.

11. *Miscellaneous.* Neither this Guaranty Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. All the terms of this Guaranty Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns, and in particular shall be enforceable by any holder or holders from time to time of the Indebtedness or any part thereof. Guarantor agrees and consents that Obligee shall have the right to assign or transfer this Guaranty Agreement or any of Obligee's rights or powers hereunder to any other person, firm or corporation and such assignment shall not affect the liability of Guarantor hereunder. The books and records of Obligee showing the account between Obligee and Obligor shall be admissible in evidence in any action or proceeding, shall be binding upon Guarantor for the purpose of establishing the items therein set forth, and shall constitute prima facie proof thereof. In the event that there shall be more than one Guarantor, the obligations of each Guarantor shall be both joint and several.

Guarantor agrees to all the provisions set forth above. This agreement is executed pursuant to due authorization.

GUARANTOR ACKNOWLEDGES RECEIPT OF A SIGNED TRUE COPY OF THIS AGREEMENT.

Date October 29, 1999

Accepted on November 18, 1999

**Creative Paper, Inc.** (Guarantor)

By: _____

Its PRESIDENT
(If Corporation, President or Vice President should sign and give official title; if Partnership, state partner)

Attest: _____ [Seal]
Clerk

**Wentworth Capital, a division of Charter Financial, Inc.** (Obligee)

By: _____

Its Executive Vice President
(Title of Officer)