UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION OF THE DISTRICT OF MASSACHUSETTS

---

In re:                                          |
                                                |
**CREATIVE PAPER, INC.**                        |          Case No. 03-45891-HJB
                                                |          Chapter 11
                          Debtor                |

---

**THIRD PLAN OF REORGANIZATION DATED JANUARY 28, 2005**

Pursuant to Section 1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et seq.) (the "Bankruptcy Code"), Creative Paper, Inc., the Debtor and Debtor-in-Possession herein (the "Debtor")  proposes the following Third Plan of Reorganization (the "Plan") to its creditors.

**ARTICLE I:  DEFINITIONS**

A.  In this Plan the following terms (which appear in this Plan as capitalized terms) have the following meanings:

"**Administrative Claim**" means a Claim for a cost or expense of administration of the Debtor under Sections 503(b) and 507(a)(1) of the Bankruptcy Code that is allowed by a Final Order of the Bankruptcy Court.

"**Allowed**" means, with reference to a Claim that is not an Administrative Claim, a Claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim or, if no proof of Claim is filed, a Claim which has been listed by the Debtor in its schedules filed pursuant to Bankruptcy Rule 1007; and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; or as to which any objection has been interposed, if such Claim has been allowed in whole or in part by a Final Order.

"**Bankruptcy Code**" means Title 11 of the United States Code, as is now in effect or hereafter amended.

"**Bankruptcy Court**" means United States District Court for the District of Massachusetts, Western Division having jurisdiction over the Reorganization Cases and, to the extent of any reference made pursuant to Title 28, United States Code, Section 157, the United States Bankruptcy Court for the District of Massachusetts or any court having competent jurisdiction to enter the Confirmation Order.

"**Bankruptcy Rules**" means the Rules of Bankruptcy Procedure, as amended, and such local rules and administrative orders of the Bankruptcy Court, as are applicable to the Reorganization Cases.

"**Claim**" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"**Code**" will mean the Bankruptcy Reform Act of 1978, as amended, which has been codified as Title 11 of the United States Code.

"**Confirmation**" means the signing of the Confirmation Order by the Bankruptcy Court.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

"**Confirmation Order**" means the order of the Bankruptcy Court or any other court of competent jurisdiction confirming the Plan.

"**Consummation**" means (A) the transfer of all or substantially all of the property proposed by the Plan to be transferred; (B) assumption by the Debtor or by the successor to the Debtor under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and (C) commencement of distribution under the Plan.

"**Debtor**" means Creative Paper, Inc., the Debtor in the above-captioned case.

2

"**Disclosure Statement Order**" means the Order of the Bankruptcy Court issued pursuant to section 1125 of the Bankruptcy Code approving, among other things, the Disclosure Statement, setting dates for the confirmation hearing and for filing objections to the Plan, and establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan.

"**Disputed Unsecured Claim**" means, respectively, an Unsecured Claim against the Debtor as to which an objection has been or may be timely filed by any party in interest and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court, and has not been denied by a Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim will be a Disputed Claim only to the extent of the objection.

"**Distribution Record Date**" means ten (10) days prior to the Effective Date, as set forth in the Disclosure Statement Order.

"**Effective Date**" means the first business day that is at least thirty (30) days after the Confirmation Date on which no stay of the Confirmation Order is in effect; and on which all conditions of the Plan have been performed or waived.

"**Equity Security**" means any share in the Debtor, whether or not transferable or denominated "stock," or similar security, or any warrant or right to purchase, sell, or subscribe to a share, security or stock of the Debtor.

"**Equity Security Holder**" means the holder of any equity security of the Debtor.

"**Filed**" means filed with the Bankruptcy Court in the Reorganization Case.

"**Final Order**" means an order of the Bankruptcy Court, or any other court of competent jurisdiction, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the

3

Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Fed. Rules Civ. Pro., or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not prevent such order from being a Final Order.

"**Person**" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, governmental entity or any other entity.

"**Petition Date**" with respect to the Debtor will mean the date upon which its case commenced which was October 13, 2003.

"**Plan**" will mean this Plan of Reorganization under Chapter 11 of the Bankruptcy Code for the Debtor as it may be modified or amended from time to time.

"**Priority Tax Claims**" will mean Claims entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code as scheduled or as determined by a Final Order of the Bankruptcy Court.

"**Professional Compensation and Reimbursement Claims**" means Administrative Claims for the compensation of professionals and reimbursement of expenses incurred by such professionals pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Bankruptcy Code.

"**Reorganization Cases**" means the Chapter 11 cases pending before this Court as Case No. 03-45891-HJB.

"**Secured Claim**" means a Claim that is secured within the meaning of Section 506(a) of the Bankruptcy Code.

"**Unsecured Claim**" means a Claim that is not secured by a valid and enforceable lien against property of the Debtor.

B. <u>Interpretation; Application of Definitions and Rules of Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall

4

include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Unless otherwise specified, all section and article references in this Plan are to the respective sections in and articles of the Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and will not limit or otherwise affect the provisions hereof. Words denoting the singular number will include the plural number and vice versa.

## ARTICLE II:  CLASSIFICATION OF CLAIMS AND INTERESTS

1. <u>Class One:  Tax Claims</u>.  Class One consists of all Allowed Priority Tax Claims, as scheduled or as filed and allowed by the Court, of whatever kind or nature which are not included in any other Class hereof.

2. <u>Class Two:  Claims of Chittenden Bank</u>.  Class Two consists of those claims of Chittenden Bank ("Chittenden"), a creditor whose claims are secured by a first security interest in accounts receivable and inventory of the Debtor and a third place security interest in the Debtor's furniture, fixtures and equipment, but each such claim is included in this class only to the extent of the amount of the claim or the value of the property which is the subject of the lien or security interest, whichever is smaller.

3. <u>Class Three:  Claims of Wells Fargo Equipment Finance, Inc.</u>  Class Three consists of those claims of Wells Fargo Equipment Finance, Inc. Bank ("Wells Fargo"), a creditor whose claims are secured by liens upon certain equipment of the Debtor and junior interests in accounts receivable and inventory, but each such claim is included in this class only to the extent of the

amount of the claim or the value of the property which is the subject of the lien or security interest, whichever is smaller.

4. <u>Class Four: Commonwealth Corporation</u>.  Class Four consists of those claims of Commonwealth Corporation ("Commonwealth") a creditor whose claims are secured by a second place security interest in accounts receivable and inventory, but each such claim is included in this class only to the extent of the amount of the claim or the value of the property which is the subject of the lien or security interest, whichever is smaller.

5. <u>Class Five:  Claims of MCRC</u>. Class Five consists of those claims of MCRC ("MCRC"), a creditor whose claims are secured by liens junior to Wells Fargo upon certain equipment of the Debtor and junior interests in accounts receivable and inventory, but each such claim is included in this class only to the extent of the amount of the claim or the value of the property which is the subject of the lien or security interest, whichever is smaller.

6. <u>Class Six: Claims of Precision Plant Services, Inc</u>.  Class Six consists of those claims of Precision Plant Services, Inc. ("Precision"), a creditor whose claims are secured by a junior lien on the Debtor's equipment, but each such claim is included in this class only to the extent of the amount of the claim or the value of the property which is the subject of the lien or security interest, whichever is smaller. At the Petition Date, Precision was owed approximately $110,000.

7. <u>Class Seven: Non-Insider Unsecured Claims Against the Debtor</u>.  Class Seven consists of all Allowed Non-Insider Unsecured Claims, as scheduled or as filed and allowed by the Court, against the Debtor of whatever kind or nature which are not included in any other Class hereof, including, without limitation, claims based on the rejection of executory contracts or unexpired leases, and claims for damages to person or property based on strict liability, negligence or breach of a warranty, express or implied, relative to services rendered or products delivered by the Debtor.

8. <u>Class Eight: Insider Unsecured Claims Against the Debtor</u>. Class Eight consists of all Allowed Insider Unsecured Claims, as scheduled or as filed and allowed by the Court, against the Debtor of whatever kind or nature which are not included in any other Class hereof, including, without limitation, claims based on the rejection of executory contracts or unexpired leases, and claims for damages to person or property based on strict liability, negligence or

breach of a warranty, express or implied, relative to services rendered or products delivered by the Debtor.

9.  <u>Class Nine: Stock Warrant Claims or Interests</u>.  Class Nine consists of all claims that arise under warrants for the Debtor's stock of whatever kind or nature which are not included in any other Class hereof.

10.  <u>Class Ten:  Stockholder Interests</u>.  Class Ten consists of all Equity Interests of stockholders, as scheduled or as filed and allowed by the Court, of whatever kind or nature which are not included in any other Class hereof.

## ARTICLE III:  TREATMENT OF CLAIMS

A.  <u>Claims not considered impaired under 11 U.S.C. §1124.</u>

Administrative expenses are not impaired under this Plan and will be paid either in full on the Effective Date, provided that no stay of the Confirmation Order is then in effect, or upon such payment schedules as may be, or may have been, agreed upon between the holder thereof and the Debtor. Ordinary trade debt incurred in the course of the Chapter 11 case will be paid by the Debtor on an ongoing basis in accordance with the ordinary business practice and terms between the Debtor and the trade creditor.

Claims in Class One, Tax claims, will be paid in full on the Confirmation Date.

Claims in Class Two, those belonging to Chittenden, are not impaired. Chittenden has an allowed secured claim in the amounts outstanding as of the Confirmation Date, which claim is, and shall continue to be, secured as provided in the Financing Agreements (as described in that certain "Stipulation Re: Use of Cash Collateral, Adequate Protection and Post-Petition Borrowing" dated December 2, 2003, as amended, modified and extended, between Chittenden and Creative Paper ("Stipulation"). Upon Confirmation Chittenden shall have, and shall be deemed to have, a perfected first priority security interest in all Accounts, Deposit Accounts, General Intangibles, Contract Rights and Inventory of Creative Paper, and in all proceeds (including insurance proceeds) thereof, replacements therefore, and accessions thereto. Also, Chittenden shall continue to have, and shall be deemed to have, a perfected security interest in all "Other Collateral" of Creative Paper, as that term is used in the Stipulation.

Claims in Classes Four and Ten are not impaired.

Professional Compensation and Reimbursement Claims.

The holders of Professional Compensation and Reimbursement Claims shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is ninety (90) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court. If granted such an award by the Bankruptcy Court, such award shall be paid in full in such amounts as are Allowed by the Bankruptcy Court either (a) on the date such Professional Compensation and Reimbursement Claim becomes an Allowed Professional Compensation and Reimbursement Claim, or as soon thereafter as is practicable, or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Compensation and Reimbursement Claim and the Debtor.

Claims considered impaired under 11 U.S.C. §1124.

(a) Class Three:  Claims of Wells Fargo Equipment Finance, Inc. Claims in Class Three are impaired. On the Petition Date the claim of Wells Fargo was approximately $4,153,801 not including late fees or other charges.  At the time of the drafting of this disclosure statement, GECC on behalf of Wells Fargo claimed that its claim is approximately$4,845,162 including late fees of $267,540. The fair market value of Wells Fargo's collateral is approximately $8 to $10 million. The principal will be $4,534,976.59 plus a restructure fee of $135,000.  The interest rate on the obligations to Wells Fargo will be 10.99% other than the restructure fee.  Beginning January 20, 2005, the Debtor will pay $52,000 per month for six months which amount will be applied first to interest on a monthly basis with the balance to be applied to principal.  Beginning July 20, 2005, the Debtor will pay $62,000 per month for forty-two (42) months with the payments applied first to interest on a monthly basis and the balance applied to principal.  Beginning January 20, 2009, the Debtor will pay GECC $100,000 per month through and including December 20, 2010. If the Debtor timely makes all payments the remaining balance will be amortized over a three (3) year period at the same interest rate. The restructure fee would be added to the balance to be amortized at this point together with the unpaid principal balance. The unpaid balance of principal and interest of the Wells Fargo Loan plus unpaid attorneys' fees, costs and expense shall be payable in

full on January 15, 2011; provided, however, that the attorneys' fees, costs and expenses that are to be paid to GECC are only those allowed by the Court on application under section 506(b). The warrant claim will be waived in exchange for $100,000 unsecured claim. Wells Fargo will retain its liens securing its claims.

In addition to the allowed secured claim amount of the Wells Fargo Loan, as stated above the Debtor shall pay to GECC a restructure fee in the amount of $135,000 (the "Restructure Fee"). In consideration of the Debtor's agreement to pay the Restructure Fee, GECC agreed to waive, release and forever discharge without payment 50% of its claim for late fees (being $133,770 of the $267,540 referenced). If GECC shall have received timely payment of each installment payment, including the January 2011 balloon payment (unless re-financed as provided above, in which case this sentence shall apply to all extended payments), within 15 days of the scheduled due date of each such payment and without necessity of the Debtor's receiving notice of non-payment, GECC agrees to waive, release and forever discharge, effective January 16, 2011, payment of the other 50% of its claim for late fees.

The Wells Fargo Loan shall be treated as a fully secured claim under the Plan and that such treatment shall be binding on all creditors and parties in interest in the Case upon confirmation of the Plan, and GECC may file UCC financing statements if it so desires immediately upon Confirmation of the Plan.

In the event that adversary proceedings to determine whether the Wells Fargo Loan is fully secured and are subsequently filed and prosecuted to a final and non-appealable judicial determination, the remedies of prevailing party(ies) shall be strictly limited to the relief set forth below:

(1) Should the Debtor or the Committee prevail in its complaint and the security interests of GECC be avoided, then (i) GECC shall disgorge to the Debtor, in trust and solely for distribution to creditors under the Plan, all payments theretofore received by GECC under the Plan, less the total of: (a) an amount equal to distributions GECC would have received under the Plan had GECC been an unsecured creditor ab initio; (b) an amount equal to all distributions subsequent to the Petition Date and/or under the Plan paid to MCRC; (c) all distributions under the Plan to any other creditor who had subordinated his/its claim to GECC as of the

date hereof; and (d) all distributions to GECC on account of its Warrant claim in the amount of $100,000; and, (ii) GECC will after such disgorgement be treated as an unsecured creditor for purposes of all subsequent distributions.

(2)     Should GECC prevail in its counterclaim that the non-consensual subordination of the claim of Creative Packaging, Inc. was inappropriate and/or done in bad faith or without consideration, then an amount equal to all distributions Creative Packaging, Inc. would have received under the Plan as of the date of such determination without giving effect to such subordination shall be paid to GECC out of sums otherwise payable thereafter to unsecured creditors and no further payment under the Plan to unsecured creditors shall be made until such amount is paid in full to GECC, and, thereafter, subsequent plan distributions shall be made including the claim of Creative Packaging, Inc. pari passu with all other unsecured claims.

(b)  Class Five:  Claims of MCRC. Claims in Class Five are impaired. MCRC will retain the liens securing its claims, but only to the extent of the allowed amount of such claims. MCRC will receive on account of such claims deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the Plan, of the value of MCRC's interest in the Debtor's property. The deferred payments to MCRC for the first twenty four (24) months of the Plan, beginning with the first payment due upon Confirmation Date, will be $16,625 per month, an amount equal to the interest on the outstanding balance due to MCRC calculated at 7%.  Beginning with the twenty-fifth (25th) month after Confirmation Date, the Debtor will make payments at the rate of $38,856.09 per month for a period of 35 months, representing amortization of the balance due to MCRC ($2,850,000) at 7%, and using an 8 year amortization period.  The unpaid principal balance due under the note, an amount equal to $1,258,411.75, together with interest for the last month ($7,523.51), will be due and payable at the end of sixty (60) months. To the extent that MCRC's claims are unsecured, those claims against the Debtor will be treated in Class Seven below.

(c) <u>Class Six: Claims of Precision Plant Services, Inc</u>.  Claims in Class Six are impaired. Upon the Effective Date, the Debtor will pay Precision $2,000 per month for 41 months after the Effective Date.

(d) <u>Class Seven: Non-Insider Unsecured Claims Against the Debtor</u>.  Claims in Class Seven are impaired. Claimants in Class Seven will receive a dividend of one hundred (100) percent of their claims payable with interest at 3% from the Effective Date payable as follows:

       1. $100,000 on the Effective Date; and thereafter

       2. Quarterly payments of $100,000 commencing on or about 90 days after the Effective Date.

All payments will be distributed pro rata among the unsecured claimants; provided, however that no dividend payment shall be less than $200 on the first distribution date and $400 on each subsequent quarterly distribution date.

In addition to the quarterly payments described above, the Debtor shall distribute with each quarterly payment an amount equal to 50% of the average net income of the Debtor for the four quarters prior to each quarterly payment date ("Income component") beginning with the fifth quarterly payment post-Confirmation; provided, however, no income component payments will be made unless the total of the cash balance and availability under the Debtor's line of credit at the end of the quarter in which payment is to be made exceeds $1.5 million and for any quarter during which there is a loss, there will be no income component distribution.  Any increase in the amount of the payment as a result of the income allocation noted above, will decrease the amount owed and shall not increase the total amount to be paid by Debtor.

(e) <u>Class Eight: Claims by Insider Unsecured Creditors</u>: No payments will be made upon Insider Unsecured Creditors until such time as Class Seven claims are paid in full.

(f) <u>Class Nine: Claims by Warrant Holders</u>.  Claims in Class Nine are impaired. Claimants in Class Nine will receive an unsecured claim of One Hundred Thousand Dollars ($100,000) to be paid in, and in accordance with the provisions of, Class Seven. To the extent that the warrant is considered an executory contract, it is hereby rejected.

## ARTICLE IV:  MEANS FOR EXECUTION OF THE PLAN

A.  <u>Property of the Debtor's Estate</u>.  On Confirmation, all property of the Debtor, tangible and intangible, including, without limitation, contracts, franchise agreements, contract rights, licenses, furniture, fixtures and equipment, will revert to the Debtor, free and clear of all claims and interests except as provided in this Plan.

B.  <u>Payments to Creditors</u>. The payments to be made to the holders of claims hereunder on the Effective Date and thereafter will be made by the Debtor.

C.  <u>Payment of Quarterly Fees to the U.S. Trustee</u>.  All quarterly disbursement fees, arising under 28 U.S.C. §1930 ("Quarterly Fees"), accrued prior to confirmation shall be paid in full, on or before the date of confirmation of the Plan, by the Debtor or any successor to the Debtor. All Quarterly Fees which accrue post-confirmation shall be paid in full on a timely basis by the Debtor or any successor to the Debtor prior to the Debtor's case being closed, converted or dismissed.

D.  <u>Post-Confirmation Compliance Monitor</u>.  On Confirmation, Timothy Hurley of Deloitte Touche LLP, or his successor, will be designated as the person who will monitor the Debtor's compliance with the Plan (the "Post-Petition Compliance Monitor"). He will act in such role so long as there are unpaid claimants in Class Seven. The costs of such monitoring, which are not to exceed $1,000 per quarter barring extraordinary circumstances, will be borne by the Debtor. The Debtor shall provide Mr. Hurley quarterly operating reports showing actual operating results for the quarter prior to the month in which the report is sent. In addition, until such time as the Plan is fully consummated with respect to the claims in Class Six, i.e., all claims are paid in full, on behalf of the unsecured creditors of the Debtor the Post-Petition Compliance Monitor shall be authorized to bring an adversary proceeding to determine whether the Wells Fargo Loan is fully secured which adversary proceeding shall be subject to the limitations set forth in the treatment of the Wells Fargo claim above. The reasonable costs of such adversary proceeding shall be agreed between the Debtor and the Post-Petition Compliance Monitor.

G. <u>Provision for Disputed Claims</u>.

Except for any adversary proceeding in connection with the determination of the secured status of the Wells Fargo Loan the time for which has been extended hereunder, the Debtor may object to the allowance of any Claim within 90 days of the Effective Date by filing an objection with the Bankruptcy Court and serving a copy thereof on the holder of the Claim in which event the Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Debtor will make any payments in respect of such Allowed Claim in accordance with the Plan.

## ARTICLE V:  TREATMENT OF EXECUTORY CONTRACTS

Other than the rejection of the Wells Fargo warrant, the Debtor does not anticipate the rejection of any other executory contracts. Subject to the requirements of Section 365 of the Bankruptcy Code, all executory contracts or unexpired leases of the Debtor that have not been rejected by the Plan or order of the Bankruptcy Court or are not the subject of a motion to reject pending 90 days after the Confirmation Date will be assumed by the Debtor.

If any party to an executory contract or unexpired lease which is deemed assumed, objects to such assumption, the Bankruptcy Court may conduct a hearing on such objections on a date which is fixed by the Bankruptcy Court.  All payments to cure defaults that may be required by Section 365(b)(1) of the Bankruptcy Code will be made by the Debtor.  In the event of a dispute regarding the amount of any such payments or the ability of the Debtor to provide for adequate assurance of future performance, the Debtor will make any payments required by Section 365(b)(l) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. All proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within thirty (30) days from and after the date of entry of an order of the Bankruptcy Court confirming the Plan or approving such rejection or such Claims will be barred. Claims arising from rejections of executory contracts and unexpired leases will be treated as unsecured creditor claim.

## ARTICLE VI:  PROVISION FOR DISPUTED CLAIMS

The Debtor may object to the allowance of any Claims within 90 days of the Effective Date by filing an objection with the Bankruptcy Court and serving a copy thereof on the holder of the Claim in which event the Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Debtor will make any payments in respect of such Allowed Claim in accordance with and limited by the Plan.  The Debtor will escrow dividend amounts that would otherwise be paid to the amount of disputed claims in Class Seven until such time as the objections are resolved to any particular claim. Should the claim be resolved in favor of the claimant, its claim will be paid initially from the escrow and then in accordance with the payment schedule. Should the claim be resolved in favor of the Debtor, the escrow will be distributed pro rata to holders of claims in Class Seven.

## ARTICLE VII: PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS

A.  <u>Voting of Claims</u>. Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote separately with regard to each Impaired Class of Claims held by such holder to accept or reject the Plan as provided in the Disclosure Statement Order.

B.  <u>Elimination of Vacant Classes</u>. Any Class of Claims that is not occupied as of the Commencement Date of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

C.  <u>Non-consensual Confirmation</u>. If any Impaired Class of Claims or Equity Interests entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.

14

D.  Method of Distributions Under the Plan.

(1) Distributions. All distributions under the Plan shall be made by the Debtor .

(2) Distributions to Holders as of the Distribution Record Date.

(i) Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made to the holder of each Allowed Claim or Equity Interest at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a timely proof of Claim or Equity Interest by such holder that provides an address for such holder different from the address reflected on the Schedules.

(ii) As at the close of business on the Distribution Record Date, the claims register and records of the stock transfer agent shall be closed, and there shall be no further changes in the record holder of any Claim or Equity Interest. The Debtor shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Distribution Record Date. The Debtor shall instead be authorized and entitled to recognize and deal for all purposes of the Plan with only those record holders stated on the claims register or the records of the stock transfer agent as of the close of business on the Distribution Record Date.

(3) Distributions. Any payment made by the Debtor pursuant to the Plan shall, at the Debtor's option, be made by check drawn on a domestic bank or wire transfer .

(4) Timing of Distributions. Except as otherwise set forth in the Plan, payments and distributions to holders of Allowed Claims or Equity Interests on the Effective Date shall be made on the Effective Date, or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(5) Allocation of Plan Distributions. All distributions in respect of Allowed Claims shall be allocated first to the portion of such Claims representing interest (as determined for federal income tax purposes), second to the original principal amount of

such Claims (as determined for federal income tax purposes), and any excess to the remaining portion of such Claims.

(6) <u>Minimum Distributions</u>. No payment of less than one dollar ($1) shall be made by the Debtor to any holder of a Claim or Equity Interest unless a request therefor is made in writing to the Debtor.

(7) <u>Unclaimed Distributions</u>.  Unless otherwise notified in writing by a claimant as to his, her or its current address, the Debtor will make dividend payments to a claimant at the address shown on the Debtor's books and records or, if the creditor has filed a proof of claim, at the address shown on the proof of claim. In the event that a dividend check is returned to the Debtor, then for a period of ninety (90) days from the date that the dividend check was returned the Debtor will endeavor to obtain a new address for the creditor. In the event it is unable to find a new address for the creditor, all dividends for that creditor will be retained by the Debtor in escrow for the creditor. If, after six (6) months, a creditor has failed to make its address known to the Debtor then that creditor will have been deemed to have waived its rights to dividend payments and the amount representing such dividends shall revert to the Debtor.

E.  <u>Objections to and Resolution of Administrative Expense Claims and Claims</u>.

Except as to applications for allowance of compensation and reimbursement of Professional Compensation and Reimbursement Claims under sections 330 and 503 of the Bankruptcy Code, the Reorganized Debtor shall, on and after the Effective Date, have the exclusive right to make and file objections to Administrative Expense Claims and Claims. On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Administrative Expense Claims and Claims and compromise, settle or otherwise resolve Disputed Administrative Expense Claims and Disputed Claims without the approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall file all objections to Administrative Expense Claims that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses) and Claims and serve such objections upon the holder of the Administrative

Expense Claim or Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

## ARTICLE VIII:  RETENTION OF JURISDICTION

The Court will retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Code and with respect to the following matters:

A.  To enable the Debtor to consummate the Plan and to resolve any disputes thereto;

B.  To enable the Debtor to consummate any and all proceedings which it may bring prior to the entry of the order of confirmation to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which it may be entitled under all applicable provisions of the Code or other federal, state or local law;

C.  To hear and determine all claims arising from the rejection of any executory contracts, including leases, and to consummate the rejection of executory contracts rejected hereunder or with respect to which an application for rejection was filed prior to entry of the order of confirmation;

D.  To liquidate damages in connection with any disputed, contingent or unliquidated claims;

E.  To adjudicate all controversies concerning the classification or allowance of any claims or interest;

F.  To adjudicate all claims to a security interest in any property of the estate hereunder or in any proceeds thereof;

G.  To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of this Chapter 11 case;

H.  To recover all assets and property of the estate wherever located;

I.  To make such other orders as are necessary or appropriate to carry out the provisions of this Plan;

J.  Whether before the Chapter 11 case is closed or after the granting of a motion to reopen the case after the closure, to hear a cause of action that the lapse subsequent to the filing

of this Chapter 11 case but before confirmation of the Plan of the UCC financing statements which perfected the security interests of Wells Fargo had the legal effect of making such security interests avoidable under §544(a) with the consequence that the claims of Wells Fargo in Class Three should have been treated as a general, unsecured claim under the Plan; and

K. In the event that the action described in subparagraph J above is brought, then to hear a cause of action by Wells Fargo that the subordination of the unsecured claim of Creative Packaging, Inc. was, as of confirmation of the Plan, improper and done in bad faith or without appropriate consideration absent consent of all parties, and that Wells Fargo is entitled to all, or a portion of, distributions which would have been made to Creative Packaging, Inc. absent the subordination effected under the Plan.

## ARTICLE IX. ADDITIONAL PROVISIONS APPLICABLE TO ALL CLASSES CONCERNING DISTRIBUTION AND DISCHARGE

A. Payments, distributions and other treatment provided for each Allowed Claim and Allowed Interest in the Plan, will constitute full and complete satisfaction, discharge and release of all such claims of or against the Debtor pursuant to 11 U.S.C. § 1141, et seq.

B. Notwithstanding any other provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments or distributions in respect to any Claim and Interest, which at such dates or time is disputed, unliquidated or contingent, will not be made until such claim or interest becomes an Allowed Claim or Interest, whereupon such payments and distributions will be made promptly, and in accordance with this Plan.

C. Distribution will not be made under this Plan to any and all persons holding claims against or Interests in the Debtor prior to Confirmation, except as may be provided herein.

D. The distributions that are made to the various classes of creditors and on account of Allowed Administrative Expenses and Priority Claims hereunder will not be subject to levy, garnishments, attachment or like legal process, by any creditor or Administrative Expense Claimant or holder of any interest or a senior class of creditors by reason of claimed contractual subordination rights, so that each creditor, and Administrative Expense Claimant will have received the benefit of the distribution set forth in this Plan.

E. The Order confirming the Plan will be a judicial determination of the discharge of the liabilities of all claims against the Debtor, except as may be otherwise provided for in this Plan.

## ARTICLE X: MISCELLANEOUS PROVISIONS

Governing Law.  Except to the extent the Bankruptcy Code of Bankruptcy Rules are applicable, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law thereof.

Corporate Action. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the shareholder or directors of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of Massachusetts, the state in which the Debtor is incorporated, without any requirement of further action by the shareholder or directors of the Debtor.

Headings.  The headings of the Articles, paragraphs, and sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

Amendment and Modification.  This Plan may be altered, amended or modified only by the Debtor before, on, or after the Confirmation Date as provided in the Plan or Section 1127 of the Bankruptcy Code.

Severability.  Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or interest, such provision will be unenforceable either as to all holders of Claims or as to the holder of such Claim as to which the provision is illegal, respectively.  Such a determination of unenforceability will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Revocation.  The Debtor reserves the right to revoke and withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan, then the Plan will be deemed null and void and, in such event, nothing contained herein will be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

The Failure to Satisfy a Confirmation Condition or an Effective Date Condition.  If one or more of the conditions to Confirmation or the Effective Date that has not been waived in writing by the Debtor and is not satisfied, and the time within which such condition must be satisfied has expired, the Plan will be deemed null and void, and, in such event, nothing contained herein will be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of any of the Debtor or any Person in any further proceedings involving the Debtor.

Time.  In computing any period of time prescribed or allowed by this Plan, the date of the act, event, or default from which the designated period of time begins to run will no be included.  The last day of the period so computed will be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerks office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than eight (8) days, intermediate Saturdays, Sundays, and legal holidays will be excluded in the computation.  As used in this Plan, "legal holiday" includes New Year's day, Presidents Day, Memorial Day, Independence day, Labor Day, Columbus Day, Veterans Day, Thanksgiving day, Christmas day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the court is held.

Report on Consummation Progress.  Sixty days after entry of an order of confirmation or within such other time as the court may direct, the Debtor will file a report with the Clerk of the Court, and will serve a copy on any creditors' or equity security holders' committee appointed in the case pursuant to the Code, and on the United States Trustee, which report will set forth the actions taken and the progress made toward the consummation of the plan including a detailed account of all payments made. The Court may also direct the filing of additional reports.

Application for Final Decree.  Within 120 days following Confirmation an application for a final decree closing the Chapter 11 Case will be filed by the Debtor, unless specifically stated otherwise in the Confirmation Order.

CREATIVE PAPER, INC.
By its attorney

20

/s/Thomas J. Raftery
Thomas J. Raftery BBO #410740
P.O. Box 550
Carlisle, MA 01741-0550
(978) 369-4404

Dated: January 28, 2005