UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL, CORPORATION | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 03-12429-JGD |
| JAMES E. HAMILTON, RICHARD M. PERLMAN, and CREATIVE PACKAGING, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON ISSUE OF DAMAGES**

November 1, 2005

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, General Electric Capital Corporation ("GE Capital"), has brought this action seeking to recover under loan guaranties executed by the defendants, James E. Hamilton ("Hamilton"), Richard M. Perlman ("Perlman") and Creative Packaging, Inc. ("Creative Packaging") (collectively, the "Guarantors"). On May 23, 2005, this court issued its Memorandum of Decision and Order on Plaintiff's Motion for Summary Judgment ("Order") granting summary judgment on the issue of liability in favor of GE Capital on Counts I-III of the First Amended Complaint. (Docket No. 26). By these

counts, GE Capital sought to recover under the guaranties.[1] There were, however, disputed facts relating to the amount due under the guaranties, and a trial was scheduled on the issue of damages.

The parties subsequently stipulated to having the issue of damages decided on the pleadings. The pleadings raise three basic issues:

1. Whether GE Capital is bound by the amounts due as set forth in Creative Paper, Inc.'s bankruptcy plan of reorganization;

2. Whether the Guarantors are responsible for late payments flowing from a missed payment in April, 2001; and

3. Whether the Guarantors failed to make a loan payment in August, 2003.

As detailed herein, this court finds that GE Capital is not bound by the compromise figure included in the bankruptcy plan, that the Guarantors are not responsible for late charges relating to the April, 2001 missed payment, and that the Guarantors did not default on their August, 2003 payment. Accordingly, as of November 1, 2005, the Guarantors are jointly and severally liable to GE Capital in the amount of $5,435,567.29.[2]

---

[1] The parties have agreed to dismiss Count IV, relating to a personal property lease, without prejudice.

[2] This figure is based on calculations submitted by GE Capital, with the correction of a mathematical error found therein.

## II. **FINDINGS OF FACT**

The factual record in this case consists of: (1) the Undisputed Facts and supporting documentation as described (and as cited) in the Order, which are incorporated herein by reference; (2) the Affidavit of Frank Sorensen, Vice President for Strategic Asset Financing at GE Capital ("Sorensen Aff.") (Docket No. 13); (3) the Second Affidavit of Frank Sorensen ("2nd Sorensen Aff.") (Docket No. 32); (4) the Affidavit of David Porter, Chief Financial Officer of Creative Paper, Inc. and Creative Packaging, Inc., in Opposition to Plaintiff's Motion for Summary Judgment ("Porter Aff.") (Docket No. 20); (5) the Affidavit of David Porter Concerning Amounts Owed Under Notes and Property Lease ("2nd Porter Aff.") (Docket No. 35); (6) Defendants' Submission of Additional Documents Requested by the Court in its October 6, 2005 Order (Docket No. 40); and (7) the Submission by General Electric Capital Corporation in Response to the Court's Order of October 6, 2005 (Docket No. 41). Based on this record, the court makes the following findings of fact:

1. Creative Paper, an affiliate of Creative Packaging, Inc., borrowed funds from Wentworth Capital, a division of Charter Financial, Inc. ("Wentworth" or "Charter"), for equipment financing. (DF ¶ 7; Porter Aff. at Ex. 1). In connection with this loan, on or about November 18, 1999, Creative Paper entered into the following agreements with Wentworth, (1) a Master Loan and Security Agreement No. 4366 ("Master Loan Agreement"), including a First Rider, Second Rider and Amendment to the Master Loan Agreement, and (2) a Loan Schedule 01 to the Master Loan Agreement, including an

Amendment to Loan Schedule 01. (PF ¶ 5; 2nd Sorensen Aff. ¶ 4). Pursuant to Loan Schedule 01, Charter extended equipment financing to Creative Paper in the principal amount of $6,500,000, and Creative Paper agreed to repay the loan in eighty-four monthly installment payments of principal and interest. (PF ¶¶ 6, 7; Sorensen Aff. at Ex. B). These payments came to $110,300.00 per month beginning on November 15, 1999. (2nd Sorensen Aff. ¶ 5).

    2. On or about December 24, 1999, Creative Paper and Wentworth entered into Loan Schedule 02 to the Master Loan Agreement. (PF ¶ 9, Sorensen Aff. at Ex. D). Pursuant to this agreement, Charter advanced to Creative Paper an additional $1 million in financing and Creative Paper agreed to repay the loan in eighty-four monthly installment payments. (PF ¶ 10; Sorensen Aff. at Ex. D). These payments, after some modifications not relevant here, came to $17,244.00 per month beginning on December 25, 1999. (2nd Sorensen Aff. ¶ 6).

    3. Creative Packaging, Inc. and its principals, Hamilton and Perlman, each entered into a Guaranty Agreement with Wentworth, guaranteeing Creative Paper's obligations under the loan agreements. (Sorensen Aff. at Exs. E, F and G).

    4. On or about November 19, 1999 and December 31, 1999, GE Capital entered into two Participation Agreements whereby Charter agreed to sell, and GE Capital agreed to purchase, participation interests in the loan agreements between Wentworth and Creative Paper, including the guaranties relating to the loan agreements. (PF ¶ 20; Porter Aff. at Exs. 9 and 10). On or about December 7, 2001, GE Capital became the Fiscal

Agent under the Participation Agreements, with the rights of "servicing, collection and enforcement of the loan agreements." (Porter Aff. at Exs. 9 and 10, Section 2).

    5. Creative Paper filed a Chapter 11 bankruptcy petition on October 13, 2003. (DF ¶ 30). The filing of the bankruptcy petition was an event of default under the Loan Agreements, as a result of which all amounts became immediately due and payable (the "Declaration Date" under the Loan Agreements). (Sorensen Aff. at Ex. A ¶ 11).[3]

    6. GE Capital contends, and the plaintiffs do not dispute, that GE Capital's damages against the Guarantors consist of the following four elements:

> (i) All accrued and unpaid amounts as of the Declaration Date;
>
> (ii) Interest at one and one-half percent (1.5%) per month on the accrued and unpaid amounts due as of the Declaration Date;
>
> (iii) The present value (as of the Declaration Date) of all future installments set forth in Loan Schedules 01 and 02 over the remaining unexpired term of the Loan Agreements, discounted to present value using a discount rate of five percent (5%); and
>
> (iv) Interest at one and one-half percent (1.5%) on the discounted present value of all future installments due. The per diem rate is $1,868.79 for Loan 01 and $291.76 for Loan 02 for a total of $2,160.55 per diem.

(2nd Sorensen Aff. ¶¶ 15, 20, 21). The Guarantors have not provided any alternatives to the present value or interest rate calculations.

## Disputed Payments

---

[3] While GE Capital contends that Creative Paper was in default prior to October 13, 2003, it has agreed for purposes of concluding this matter to use the date of the bankruptcy petition as the Declaration Date of default. (2nd Sorensen Aff. ¶ 14, and note 1).

5

7. GE Capital contends that Creative Paper failed to make a payment in the amount of $110,300.00 due on August 15, 2003 under Loan Schedule 01. (2nd Sorensen Aff. ¶ 17). With principal and interest, GE Capital contends that it is owed $149,300.87 as a result of this missed payment. (2nd Sorensen Aff. at Tab A). The Guarantors contend that this payment was, in fact, made, and have consistently taken this position since at least October 2003. (Porter Aff. ¶ 36; 2nd Porter Aff. ¶ 7).

8. I find that GE Capital has failed to establish that the payment due on August 15, 2003 was not made. Consequently, the Guarantors should not be charged $149,300.87.

9. GE Capital also contends that Creative Paper failed to make payments of $110,300.00 under Loan Schedule 01 and $17,244.00 under Loan Schedule 02 in April, 2001 and that by "skipping" these payments, all subsequent payments were in reality made one month late thereby accruing additional interest charges of $53,568.48. (2nd Sorensen Aff. at Tab A).

10. The Guarantors contend that Creative Paper had reached an agreement with the Lender to defer the April 2001 payment due to an equipment failure, and have submitted evidence to this effect. (Porter Aff. ¶¶ 23-24).

11. I find that the Guarantors have established that the April 2001 payment was deferred by agreement, and that they should not be charged $53,568.48.

### Prior Calculations

12. The Guarantors contend that GE Capital should be bound by prior figures presented in connection with the motion for summary judgment and Creative Paper's bankruptcy proceedings. However, this court finds that the prior figures were either estimates or compromise figures, and are not binding on GE Capital.

13. In the First Amended Complaint, which is not verified, GE Capital asserted that "[a]s of October 13, 2003, after acceleration as expressly provided for by the Loan Documents, Creative Paper owed approximately $4,153,801 under the Loan Documents" exclusive of fees. (First Amended Complaint ¶ 23). By its terms, this figure is an approximation. Moreover, this court notes that the figure is close to the one presently being asserted by GE Capital. Thus, GE Capital contends that as of October 13, 2003, the present value of the future monthly payments of $110,300.00 was $3,789,498.62, and the present value of the future monthly payments of $17,244.00 was $591,629.64 for a total of $4,381,128.26. (2nd Sorensen Aff. Tab B).

14. In his first affidavit, Sorensen attested that as of March 1, 2004, Creative Paper owed $4,153,801 under the Loan documents, exclusive of GE Capital's attorneys' fees and costs. (Sorensen Aff. ¶ 24). However, no explanation of the amount due was given, and there was no attempt to itemize the damages. Thus, this court does not find this figure to be binding for purposes of a damage calculation.

15. In connection with Creative Paper's Third Plan of Reorganization dated January 28, 2005 filed with bankruptcy court, GE Capital claimed that it was owed approximately $4,845,162. (Plan attached to Docket No. 40 at p. 8). Again, this figure is

an approximation by its terms, and there is no explanation of the figure, which, in context, is clearly a compromise of the claim. (<u>See</u> <u>also</u> letter of February 25, 2005 attached to 2nd Porter Aff. providing that $4,481,655.60 is the "interest bearing amount to be amortized" under the Plan of Reorganization).

### Calculations of Amounts Due

16. In its submission in response to this court's order of October 6, 2005, GE Capital recalculated the amounts due without the April 2001 and August 2003 "missing" payments, and considered the additional interest which has accrued, as well as amounts paid since the 2nd Sorensen Affidavit. (Docket No. 41). The court adopts these figures, as the Guarantors have not challenged GE Capital's calculations, except as provided above. Using these figures along with those in the 2nd Sorensen Affidavit, and correcting mathematical errors, the amount due as of November 1, 2005 is $5,435,567.29 as follows:

| DAMAGES COMPONENT | AMOUNT |
|---|---|
| Missing Sept. 2003 payment plus interest | $170,692.31 |
| Present value of future installments discounted as of 10/13/03, plus interest, for Loan 01 | $5,019,164.97 |
| Present value of future installments discounted as of 10/13/03, plus interest, for Loan 02 | $783,609.41 |

8

| | |
|---|---:|
| Additional interest accrued between 2nd Sorensen Aff. (8/1/05) and 11/1/05 (92 days at $2,160.55 per diem) | $198,770.60 |
| Payments made by Creative Paper through 10/20/05 | ($736,670.00) |
| Total damages as of November 1, 2005 | $5,435,567.29 |

## III. ORDER

Judgment shall enter in favor of the plaintiff in the amount of $5,435,567.29 for which the defendants are jointly and severally liable. Count IV of the First Amended Complaint is dismissed without prejudice, in accordance with the agreement of the parties.

      / s / Judith Gail Dein
      Judith Gail Dein
      United States Magistrate Judge